T.C. Memo. 2013-227

UNITED STATES TAX COURT

THOMAS SZEKELY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8910-12L.                    Filed September 24, 2013.

Thomas Szekely, pro se.

Eugene A. Kornel, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6320(c) of the determination by the Internal

Revenue Service (IRS or respondent) to uphold the filing of a notice of a Federal

[*2] tax lien.[1]  The IRS filed notice of this lien to assist in collecting petitioner's unpaid Federal income tax liabilities for 2006, 2007, 2008, 2009, and 2010.  The sole issue for decision is whether the IRS abused its discretion by upholding the lien notice filing.

FINDINGS OF FACT

The parties filed a stipulation of facts and related exhibits at trial.  We incorporate the stipulation of facts and the accompanying exhibits by this reference.  Petitioner resided in New York when he petitioned the Court.

Petitioner is a self-employed engineer.  He filed income tax returns for 2006, 2007, 2008, 2009, and 2010 reporting his tax liability for each year.  However, he failed to make the required estimated tax payments for these years, and he did not remit with any of his returns the balance of tax due.  Petitioner also had unsatisfied tax liabilities stemming from the 2004 and 2005 tax years.  After filing his 2006-10 returns, petitioner paid his 2004 and 2005 tax debts, and he met his quarterly estimated tax obligations for 2011 as he incurred them.

Seeing no way to meet his current tax obligations and also pay off the amounts in arrears, petitioner turned to the Taxpayer Advocate Service (TAS) of

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times.  All dollar amounts are rounded to the nearest dollar.

[*3] the IRS for assistance. Petitioner first contacted TAS in summer 2011 and communicated with TAS for several weeks. He provided to his TAS advocate all requested financial information, including a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Although TAS recommended to the IRS Collection Division that petitioner's account was uncollectible, petitioner and the IRS were unable to come to an agreement concerning his outstanding tax liabilities.

On September 2, 2011, the IRS filed a notice of Federal tax lien against petitioner's property and rights to property to assist in the collection of petitioner's $64,541 tax debt for tax years 2006-10. On September 8, 2011, the IRS mailed petitioner notice of this filing, which apprised him of his right to request a CDP hearing. On September 28, 2011, petitioner timely submitted IRS Form 12153, Request for a Collection Due Process or Equivalent Hearing. He attached to his letter his previous communications with TAS, as well as copies of checks and payment vouchers for his estimated tax payments for 2011. He hoped that by demonstrating his diligence in complying with his 2011 tax obligations, he might have greater success in persuading the IRS to resolve his tax liabilities for prior years. The IRS received petitioner's request for a CDP hearing on October 4, 2011.

**[*4]**   Four months passed before petitioner received any response from the IRS to his request for a CDP hearing.  Finally, by letter dated February 3, 2012, a settlement officer (SO) from the IRS Appeals Office acknowledged receipt of petitioner's Form 12153 and notified him that she had scheduled a telephone CDP hearing for February 23, 2012.  In the letter, the SO informed petitioner that, if he wished her to consider an offer-in-compromise (OIC) or other collection alternative, he should submit, before the scheduled CDP hearing, a completed Form 433-A together with supporting documentation and three months of bank statements.  The letter made clear that the SO could not consider collection alternatives without receiving these documents.  The SO gave petitioner 14 days from the date of her letter to provide the required information.

Petitioner timely complied with the SO's request and submitted all of the required documentation by letter dated February 12, 2012.  In that letter, petitioner clearly outlined his financial situation.  He informed the SO that he could not stay current on his 2011-12 tax obligations without a compromise of his 2006-10 tax obligations.

On February 23, 2012, petitioner telephoned the SO at 9 a.m., the time she had appointed for the hearing.  When the SO did not answer the phone, petitioner left her a message.  The SO returned his call later that morning.  During that

**[*5]** telephone conference, petitioner did not dispute the propriety of the lien notice filing, but he reiterated his desire to enter into a compromise agreement with the IRS to reduce his tax liabilities. The SO informed petitioner that he was required to complete a Form 656, Offer in Compromise, and another Form 433-A--this time, Form 433-A (OIC)--before she could consider a collection alternative. She said that she would mail petitioner the required forms and instructions.

On February 28, 2012, the SO sent petitioner a follow-up letter with the promised IRS forms. This letter asked petitioner to complete and submit these forms, with supporting documentation and the required payments (an OIC application fee and the initial offer payment), by March 13, 2012. Unlike the February 3 letter, the February 28 letter did not warn petitioner of any negative consequences if he failed to submit all of the required information by March 13.

It is not clear when petitioner received this letter, though he did not deny that he had received it before March 13. Petitioner did not communicate with the SO between the date he received the letter and March 13. Petitioner testified credibly that if he had been informed that March 13 was an absolute cutoff date, he would have called the SO to request additional time to submit the information she had requested.

**[\*6]**   On March 14, one day after the March 13 response date, the SO concluded that the filing of the notice of Federal tax lien should be sustained and forwarded the case to her manager for approval.  One week later, on March 21, the IRS sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).  The notice of determination informed petitioner that the IRS had sustained the filing of the lien notice and that it could not consider collection alternatives because he had not supplied Forms 656 and 433-A (OIC).  On March 24, before receiving the notice of determination, petitioner mailed to the SO the requested Form 656, updated financial information intended to supplement the Form 433-A that he had submitted on February 12, a check for $150 representing the OIC application fee, and a check for $1,600 representing his initial offer payment.

Almost six months later, by letter dated September 5, 2013, the IRS informed petitioner that it was unable to process the OIC that he had submitted on March 24.  The reason given was that petitioner had failed to provide a Form 433-A (OIC) as requested.  The IRS accordingly closed its file on petitioner's OIC request.

**[\*7]** OPINION

## I. Standard of Review

Pursuant to section 6320(c), petitioner timely sought review in this Court of the notice of determination. Because petitioner raises no dispute as to his underlying tax liability for any of the years in issue, we review respondent's determinations for an abuse of discretion. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

## II. Analysis

"If any person liable to pay any tax neglects or refuses to pay the same after demand," then a lien in favor of the United States arises automatically and attaches to all of that person's property and rights to property, both real and personal. Sec. 6321. The IRS lien is perfected when the assessment is made after notice and demand. See United States v. Vermont, 377 U.S. 351, 355 (1964) (citing United States v. City of New Britain, 347 U.S. 81, 84 (1954)). The filing of the lien notice ensures priority of the Federal tax lien's position over most competing creditors. See sec. 6323. After filing the notice of lien, the IRS must advise the

[*8] taxpayer of such filing within five business days and inform the taxpayer of his right to a CDP hearing. See sec. 6320(a). Unless set aside by a court, a Federal tax lien continues in force until the assessed amount is satisfied or the lien becomes unenforceable because of lapse of time. Sec. 6322.

At the CDP hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or tax lien, including "challenges to the appropriateness of collection actions" and "offers of collection alternatives." Sec. 6330(c)(2)(A)(ii) and (iii) (cross-referenced in section 6320(c)). The Appeals officer must determine whether the circumstances permit withdrawal of the notice of the Federal tax lien. See sec. 6323(j). In making a determination, the Appeals officer must consider three elements: (1) whether the IRS has followed applicable law and administrative procedure; (2) whether the issues raised by the taxpayer have merit; and (3) "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

During his CDP hearing, petitioner offered no objection to the filing of the notice of Federal tax lien per se. Rather, he urged that the IRS would not need to rely on a tax lien once his OIC was in place and he had begun to make the scheduled payments. The SO gave petitioner until March 13 to submit the OIC,

[*9] financial documents, and required initial payment. Since the OIC and supporting documentation had not arrived by March 14, when the SO closed the file, or by March 21, when the notice of determination was mailed, the IRS on those dates had before it no basis for compromising petitioner's tax liabilities and thus no basis for disturbing the notice of Federal tax lien. Superficially, the SO would not appear to have abused her discretion under these circumstances.

Having said that, we are troubled in several respects by respondent's handling of this matter. First, although we have approved allowing a taxpayer only 14 days to submit documentation in CDP cases, see, e.g., Shanley v. Commissioner, T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062 (2009), we think a 14-day deadline must be applied using a rule of reason. Respondent's counsel reported at trial that the Appeals Office does not employ a "timely mailing, timely filing" rule in situations like this. The SO thus would have treated petitioner's Form 656 and supporting information as received timely only if those documents were on her desk by March 13. Allowing time for her letter to reach petitioner and for his reply package to reach her, petitioner had only three or four days to complete a lengthy IRS form and assemble the required financial information. This suggests to us that some grace period after March 13 would have been appropriate before forwarding the recommendation for approval.

**[*10]**  Second, we are troubled by the contrast between the IRS's sluggishness in responding to petitioner's request for a CDP hearing and its alacrity in closing the case.  It took the IRS four months to acknowledge receipt of petitioner's request for a hearing, yet only one day for the SO to conclude that his case should be closed because he had missed a deadline.  This strikes us as a double standard.

Third, in exercising her discretion, a settlement officer should take into consideration the entire context of the case.  Until his final footfault, petitioner had manifested timeliness and good faith in all his dealings with the IRS during 2011-12.  The SO knew that petitioner's liabilities were properly reported; that he had previously worked with TAS to receive assistance; that he was eager to work out a compromise of his tax liabilities; that he was current on his 2011 tax liability; and that he had responded timely to her previous requests for documents and information.  Armed with this knowledge, the SO should not have lightly assumed, when petitioner's OIC package did not arrive on March 13, that he had decided to walk away from his efforts to secure a compromise.  We would hope that the IRS would reach out to a taxpayer in these circumstances and assist him in his tax compliance efforts, rather than proceed to close his case the day after a deadline

**[*11]** passes. All that was required was a two-minute phone call to inquire whether petitioner needed a little more time.[2]

Finally, respondent's haste in closing petitioner's file has prevented us from considering the centerpiece of his case--namely, his request for a collection alternative. The taxpayer is entitled to raise at the CDP hearing "any relevant issue relating to the unpaid tax," including "an offer-in-compromise." Sec. 6330(c)(2)(A)(iii). Petitioner clearly and timely raised this issue. The SO expected him to submit an OIC; she sent him the required OIC forms; and he submitted his OIC shortly after the March 13 response date. Almost six months later, the IRS considered and rejected his offer because it was accompanied, not by Form 433-A (OIC), but by financial information intended to supplement the Form 433-A that he had previously submitted to the SO. This rationale for rejecting petitioner's OIC, like other of respondent's actions in the case, seems questionable. However, the propriety of this action is not before us because it postdated the notice of determination that is the subject of our review.

Although we cannot substitute our judgment for that of the SO, see Goza, 114 T.C. at 181-182, our review of the overall record leaves us with a firm sense

[2]As we noted in Shanley, "an appeals officer's unreasonable denial of a request for more time" to complete and submit requested financial information "would * * * be an abuse of discretion." 97 T.C.M. at 1065.

**[\*12]** that petitioner has not been treated in a fair and rational manner. We will therefore remand the case for a supplemental CDP hearing to consider petitioner's OIC. See Kelby v. Commissioner, 130 T.C. 79, 86 n.4 (2008). Before the supplemental hearing, petitioner may submit a revised OIC on Form 656 accompanied by a Form 433-A (OIC) with current financial information. If petitioner is dissatisfied with the outcome of the supplemental hearing, he may pursue further review in this Court. See id. at 86.

An appropriate order will be

issued.