T.C. Memo. 2019-22

UNITED STATES TAX COURT

MILTON E. MCMURTRY, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4081-18L.                    Filed March 27, 2019.

Milton E. McMurtry, Jr., pro se.

Joseph E. Nagy and William Walter Kiessling, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by

the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice

[*2] of Federal tax lien (NFTL).[1]  Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the collection action was proper as a matter of law.  We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and respondent's motion papers, including the attached declaration and exhibits.  See Rule 121(b).  Petitioner resided in Arkansas when he filed his petition.

Petitioner filed Federal income tax returns for 2011 and 2013.  For 2011 he did not report all of his income; on the basis of third-party document matching, the IRS assessed additional tax arising from the unreported income.  For 2013 petitioner did not pay the full amount of tax shown as due on his return; the IRS assessed for that year the tax he reported as due.  As of July 2017 petitioner's aggregate outstanding liability was $152,156.

In an effort to collect these unpaid liabilities the IRS sent petitioner, on July 13, 2017, a Notice of Federal Tax Lien Filing and Your Right to a Hearing.  He timely requested a CDP hearing, stating that he was unable to "pay this off."  He

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] checked the boxes marked "Installment Agreement," "Offer In Compromise,"[2] and "I Cannot Pay Balance," and he requested discharge of the lien.[3] He did not challenge the correctness of the assessed liabilities.

After receiving petitioner's case a settlement officer (SO) from the IRS Appeals Office reviewed his administrative file and confirmed that the tax liabilities in question had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. On September 25, 2017, the SO sent petitioner a letter scheduling a telephone CDP hearing for October 24, 2017. The SO informed petitioner that, in order for her to consider a collection alternative, he needed to provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and copies of signed tax returns for 2014 and 2015. Petitioner submitted none of these documents and did not otherwise communicate with the SO before the hearing.

The SO conducted the CDP hearing on October 24 as scheduled. Petitioner stated that he had previously submitted a Form 433-A to an IRS Service Center.

---

[2]Petitioner stated that he had previously sent an "offer in compromise * * * to no avail." The transcripts of his IRS account confirm the rejection of an offer-in-compromise for tax year 2013 on May 12, 2016. This was well before the filing of the NFTL at issue on June 28, 2017.

[3]Petitioner also checked the box marked "Innocent Spouse Relief." He later explained that he was seeking relief for his wife, who is not a party to this case.

[*4] The SO checked the administrative record and confirmed that no Form 433-A was on file; she asked him to supply a copy of the form he thought he had submitted or to complete the blank Form 433-A she had mailed him earlier. She reminded him that he also needed to send her copies of signed tax returns for 2014 and 2015 in order to be considered for a collection alternative.

Petitioner acknowledged these requirements and said that he would speak with his accountant, complete the missing tax returns, and submit the Form 433-A. The SO asked that he submit these documents by October 31, 2017. On October 30 petitioner contacted the SO and said he would mail the Form 433-A overnight, which he did not do. More than six weeks later, having received none of the requested information, the SO closed the case.

On January 26, 2018, the IRS issued petitioner a notice of determination sustaining the NFTL filing, and he timely petitioned this Court.[4] On December 19, 2018, respondent filed a motion for summary judgment, to which we directed petitioner to respond. He filed no response.

---

[4]Petitioner alleges in his petition that he had filed for bankruptcy under chapter 7 of the Bankruptcy Code, but he submitted no documentation suggesting that any bankruptcy case is pending now. His account transcripts do show a bankruptcy proceeding in 2015, but it was no longer pending as of August 25, 2015. The resolution of that bankruptcy case occurred well before the NFTL filing on June 28, 2017.

**[*5]**                               Discussion

A.      Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

Because petitioner did not respond to the motion for summary judgment, we could enter a decision against him for that reason alone.  See Rule 121(d).  We will nevertheless consider the motion on its merits.  We conclude that no material facts are in dispute and that this case is appropriate for summary adjudication.

B.      Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determina-

**[\*6]** tion in a CDP case.  The general parameters for such review are marked out by our precedents.  Where (as here) the underlying tax liability is not properly at issue,[5] the Court reviews the IRS decision for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 182 (2000).  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

C.    Analysis

In deciding whether the SO abused her discretion in sustaining the collection action, we consider whether she:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).  Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).

---

[5]Petitioner did not dispute his underlying liabilities at the CDP hearing and is thus precluded from challenging them here.  See Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

**[\*7]**  In his CDP hearing request petitioner checked the box marked "I Cannot Pay Balance" and requested lien discharge.  During the hearing the SO outlined the documentation petitioner needed to submit to enable her to consider a collection alternative.  To assist him in this endeavor she mailed blank IRS forms for him to complete.

The SO gave petitioner ample time to submit the required documentation. Cf. Szekely v. Commissioner, T.C. Memo. 2013-227, 106 T.C.M. (CCH) 375, 377.  She informed him on September 25, a month before the hearing, of the need to supply these documents.  During the hearing she extended that deadline by another week, to October 31.  Petitioner contacted her by phone on October 30 and stated that he would send her the Form 433-A by overnight mail, but he failed to do this.  The SO waited almost three months before closing the case and issuing the notice of determination on January 26, 2018.

We have consistently held that it is not an abuse of discretion for an Appeals officer to reject collection alternatives and sustain collection action where the taxpayer has failed, after being given sufficient opportunities, to supply the required forms and supporting financial information.  See Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v. Commissioner, T.C. Memo. 2007-241; Roman v. Commissioner, T.C. Memo. 2004-20.  We have likewise held that it is not an

[*8] abuse of discretion for an Appeals officer to reject a collection alternative where the taxpayer is not in compliance with his ongoing tax obligations, as petitioner was not for his 2014 and 2015 tax years.  See Hull v. Commissioner, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441; Internal Revenue Manual pt. 5.14.1.4.2 (18) (Sept. 19, 2014).

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the collection action.  We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an offer-in-compromise or an installment agreement, supported by the necessary financial information.

To reflect the foregoing,

An appropriate order and decision will be entered.