T.C. Memo. 2017-204

UNITED STATES TAX COURT

JOHN MORIARTY AND CASSANDRA MORIARTY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21837-15L.                    Filed October 17, 2017.

John Moriarty and Cassandra Moriarty, pro sese.

Paulmikell A. Fabian, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: In this collection due process (CDP) case petitioners seek

review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by the

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
(continued...)

[*2] Internal Revenue Service (IRS or respondent) to uphold collection action with respect to their 2009, 2011, 2012, and 2013 Federal income tax liabilities. The parties have filed cross-motions for summary judgment under Rule 121. We find no genuine dispute as to any material fact, and we agree with respondent's position as to the law. We will accordingly grant his motion for summary judgment and deny petitioners' cross-motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. See Rule 121(b). Petitioners resided in Tennessee when they timely petitioned this Court.

Petitioners did not file a timely Federal income tax return for any year from 2007 onward. On December 12, 2013, the IRS prepared and sent to petitioners for their 2011 taxable year a substitute for return that met the requirements of section 6020(b). Prompted by this communication, petitioners filed with the IRS on May 21, 2014, delinquent Federal income tax returns for 2009, 2011, 2012, and 2013.

Petitioners did not enclose payment for the tax shown as due on those returns. The IRS immediately assessed the tax liabilities shown as due, together

[1](...continued)
Procedure. We round all monetary amounts to the nearest dollar.

[*3] with additions to tax under section 6651(a)(1) and (2) for late filing and late payment. As of May 2015 petitioners' aggregate assessed but unpaid balance due for their open tax years--2006 through 2013--was $376,340.

In an effort to collect petitioners' unpaid liabilities for 2009, 2011, 2012, and 2013, the IRS sent them, on various dates before August 20, 2014, a Notice of Intent to Levy and Your Right to a Hearing for each of the four years, and a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for 2009, 2012, and 2013. On August 28, 2014, petitioners timely submitted requests for a CDP hearing, stating that they were "not liable for all or part of the taxes" and contending that they had not received a notice of deficiency.[2]

A settlement officer (SO) from the IRS Appeals Office acknowledged petitioners' requests for a hearing. She explained that, if they wished to dispute the tax liabilities reported on the returns they filed on May 21, 2014, they needed to file Forms 1040X, Amended U.S. Individual Income Tax Return. The SO reviewed petitioners' original returns for 2009, 2011, 2012, and 2013, verified that

_____

[2]After petitioners submitted their hearing request, they received a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for 2011. Because their CDP hearing request was premature with respect to this notice, the settlement officer did not address the NFTL for 2011. Petitioners eventually requested an "equivalent hearing" with respect to that issue. Determinations made by the IRS in an "equivalent hearing" are not subject to judicial review. See, e.g., Kennedy v. Commissioner, 116 T.C. 255, 263 (2001).

**[\*4]** the liabilities reported on those returns had been properly assessed, and confirmed that all withholding credits had been properly applied.

On May 13, 2015, the SO received from petitioners a revised Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a Form 1040X for 2013.[3] The 2013 amended return, which petitioners signed "under protest," reported a tax liability $23,811 higher than that reported on their original return for that year. Petitioners did not submit an amended return for 2009, 2011, or 2012.

Petitioners proposed an installment agreement under which they would make a $225,000 down-payment and pay off "the remaining tax balance" in monthly $1,000 installments. After reviewing petitioners' revised Form 433-A and determining their allowable monthly expenses under prevailing local standards, the SO determined that they could make monthly payments of at least $5,227 toward their tax liabilities. In making this determination the SO allowed all expenses petitioners claimed except for their children's college and private secondary school tuition and contributions to petitioner husband's section 401(k) plan account. The SO accordingly proposed a full-pay installment agreement

---

[3]Petitioners' representative had previously submitted a Form 433-A to the IRS Appeals Office, evidently in connection with collection action for tax years not involved in the CDP administrative proceeding we review here.

**[*5]** whereby petitioners would pay $5,227 a month for six years or make a $225,000 down-payment followed by monthly payments of $2,102 over the same six-year period. In either case petitioners would make total payments approximating $376,340, their aggregate outstanding balance for all open years.

In a May 4, 2015, letter to the SO, petitioner wife urged that monthly tuition expenses of $4,457 should be counted as allowable expenses in determining their ability to pay. Two of petitioners' children, aged 15 and 17, attended private religious secondary schools, for which petitioners paid aggregate tuition of $2,807 per month. Petitioners' adult children attended the University of Mississippi and Mississippi State University, respectively, for which petitioners paid aggregate tuition of $1,650 per month. Petitioners asserted that removing their teenage children from religious schools would be "extremely detrimental" to their family's well-being.

Apart from the May 4, 2015 letter, petitioners submitted during the CDP proceeding no argument or information to show that they met the limited exception set forth in the Internal Revenue Manual (IRM) for including such tuition expenses as allowable monthly living expenses for purposes of determining their ability to pay. See IRM pt. 5.15.1.7(1) (Oct. 2, 2012), 5.15.1.2(4) (Nov. 17, 2014), 5.8.5.22.4(4) (Sept. 30, 2013); IRM Exh. 5.15.1-1 Q&A 10 (Nov. 17, 2014). The

**[\*6]** SO accordingly determined that these expenses were not allowable in determining the type of installment agreement for which they qualified.

Petitioners indicated that they were seeking a home equity loan to fund the proposed $225,000 down-payment but asserted that the NFTL had caused their bank to refuse to lend to them. On May 28, 2015, the SO informed petitioners that the IRS could subordinate its lien but only if they submitted (and the IRS approved) an application for lien subordination. The SO gave petitioners two weeks to submit such an application, but they submitted nothing by that deadline.

On June 26, 2015, petitioners informed the SO that their bank would not cooperate with an application for lien subordination. Petitioners accordingly rejected the SO's proposed installment agreement and instead offered an installment agreement with a $50,000 down-payment (to be funded by a retirement plan loan) and monthly payments of $2,000. Under this proposal, petitioners would pay over a six-year period a total of $194,000, roughly half of their $376,340 outstanding balance due.

In that same communication petitioners also requested, for the first time, abatement of the additions to tax for late filing and late payment. The SO expressed willingness to consider their abatement request. She gave them a deadline of

**[\*7]** July 10, 2015, to submit a written abatement request signed by them both, together with specified financial information.

Petitioners submitted nothing by that deadline or during the ensuing week. On July 17, 2015, the SO determined that the case should be closed because petitioners had declined the proposed installment agreement for which they qualified and had failed to submit anything to support their requests for lien subordination or abatement of the additions to tax. On July 30, 2015, the IRS sent petitioners a notice of determination sustaining the collection action for 2009, 2011, 2012, and 2013. They timely petitioned this Court.

## Discussion

A.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. However, the nonmoving party may not

[*8] rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

In their response to the IRS motion for summary judgment petitioners did not identify any material fact in genuine dispute.  Indeed, they themselves filed a cross-motion for summary judgment.   We conclude that this case is appropriate for summary adjudication.

 B.    Underlying Tax Liability

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  But our case law tells us what standard to adopt.  Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

A taxpayer may challenge the existence or amount of his underlying tax liability in a CDP proceeding only "if the person did not receive any statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute * * * [it]."  Sec. 6330(c)(2)(B).  The principal tax liabilities involved here are those petitioners reported on their delinquent returns filed May 21, 2014.  Peti-

**[*9]** tioners did not receive a notice of deficiency, and they had no prior opportunity to challenge these liabilities. They were accordingly free to challenge them during the CDP proceeding. See Montgomery v. Commissioner, 122 T.C. 1, 9 (2004).

However, "[a] taxpayer is precluded from disputing the underlying liability [in this Court] if it was not properly raised in the CDP hearing." Thompson v. Commissioner, 140 T.C. 173, 178 (2013). "An issue is not properly raised if the taxpayer fails * * * to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity" to do so. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. The SO correctly informed petitioners that, if they wished to challenge their self-reported liabilities for 2009, 2011, 2012, and/or 2013, they needed to submit (at a minimum) amended returns for those years, setting forth what they believed their correct tax liabilities to be.

Petitioners filed an amended return (which the IRS accepted) for only one of the years in issue, namely 2013, and that return reported a liability $23,811 higher than that shown on their original return. Given these facts, petitioners did not raise a proper challenge to the tax liabilities reported on their returns. And because they did not properly challenge these liabilities during the CDP administra-

[*10] tive proceeding, they are barred from challenging them here. See

Thompson, 140 T.C. at 178; sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin.

Regs.

Petitioners' underlying tax liabilities also include the late-filing and late-payment additions to tax that the IRS determined and assessed under section 6651(a). Toward the end of the CDP proceeding petitioners sought abatement of these additions to tax, and the SO informed them of the information they would need to submit in order for her to consider their abatement request. The SO gave petitioners a deadline to submit this information, but they submitted nothing by that deadline or during the ensuing three weeks before the IRS issued the notice of determination. Petitioners were free to ask the SO for additional time to submit the required documentation, but they did not do so. Under these circumstances, petitioners did not properly challenge their underlying liability for the additions to tax during the CDP administrative proceeding, and they are accordingly precluded from advancing such a challenge here. See Pough v. Commissioner, 135 T.C. 344, 349 (2010); secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.[4]

---

[4]Petitioners contend that the SO set an unreasonably tight deadline for their submission of documentation to support their request for abatement of the

(continued...)

**[*11]** C.      Abuse of Discretion

Where the taxpayers' underlying liability is not before us, we review the IRS decision for abuse of discretion only. See Goza, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

In deciding whether the SO abused her discretion in sustaining the collection action, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure had been met; (2) considered any relevant issues petitioners raised; and (3) determined whether "any proposed collection action balance[d] the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). The SO analyzed petitioners' account transcripts and verified that the liabilities in question had been properly as-

_____

[4](...continued) additions to tax. But petitioners did not raise this issue until the very end of the CDP proceeding, which had been underway for 10 months. Under these circumstances the SO did not act unreasonably in setting a short deadline. In any event the IRS waited three weeks after that deadline had passed before issuing the notice of determination. Petitioners were free to request an extension of time but failed to do so.

[*12] sessed and that all other requirements of applicable law and administrative procedure had been met.[5]

The principal issue petitioners raised was their entitlement to an installment agreement. Section 6159 authorizes the Commissioner to enter into an installment agreement if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson, 140 T.C. at 179. The decision to accept or reject an installment agreement lies within the SO's discretion. See sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.; see also Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014). In reviewing the SO's determination, we do not make an independent evaluation of what would be an acceptable collection alternative. Thompson, 140 T.C. at 179; Murphy, 125 T.C. at 320; Lipson v. Commissioner, T.C. Memo. 2012-252, 104 T.C.M. (CCH) 262, 264. Rather, our review is limited to determining whether the SO abused her discretion, that is, whether her decision to reject the taxpayers' proposal was arbitrary, capricious, or

---

[5]Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives written supervisory approval. This provision does not apply to "any addition to tax under section 6651, 6654, or 6655." Sec. 6751(b)(2)(A). Accordingly, the SO was not required to verify that the additions to tax assessed against petitioners under section 6651(a) had been approved by a supervisor.

**[*13]** without sound basis in fact or law. <u>Thompson</u>, 140 T.C. at 179; <u>Murphy</u>, 125 T.C. at 320.

The SO determined that petitioners qualified for a full-pay installment agreement under which they would pay off their $376,340 outstanding balance over a six-year period. Petitioners rejected that proposal and offered an installment agreement with a $50,000 down-payment and monthly payments of $2,000. Their offer, under which they would pay only $194,000 over six years, was premised on their assertion that monthly tuition expenses of $4,457 for their children should be counted as allowable expenses in determining their ability to pay. After consulting applicable IRM provisions, the SO determined that the college and private secondary school tuition expenses incurred for petitioners' children were not allowable expenses in determining their entitlement to a collection alternative.

The SO did not abuse her discretion in making this determination. Under the IRM, secondary school and college tuition is a "conditional" expense that may in some circumstances be allowed in evaluating a collection alternative. But for such expenses to be allowable, the taxpayer must establish that he will discharge his entire unpaid tax liability within six years. <u>See</u> IRM Exh. 5.15.1-1 Q&A 10 (Nov. 17, 2014) (specifying that parochial school expenses are allowed in evaluating a proposed installment agreement only "if the taxpayer can pay the liability

[*14] plus accruals within six years"); cf. Thompson, 140 T.C. at 190-192 (distinguishing between "conditional" and "necessary" expenses and concluding that the IRM places secondary school and college tuition in the former category); IRM pt. 5.8.5.22.4(4) (Sept. 30, 2013) (specifying that for evaluating offers-in-compromise, "[e]xpenses for dependents to attend * * * private schools will not be allowed unless the dependents have special needs that cannot be met by public schools"). Because petitioners' offer would have enabled them to pay only $194,000 or about half of their total outstanding liability within six years, the SO properly concluded that their tuition expenses were not allowable under the IRM. We have previously held that a settlement officer does not abuse her discretion when she relies on relevant IRM provisions in evaluating collection alternatives. Eichler v. Commissioner, 143 T.C. 30, 39 (2014); see also Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 830 (8th Cir. 2007) (finding no abuse of discretion "where the IRS followed the statutes and regulations governing grants of relief"); Lipson, 104 T.C.M. (CCH) at 264. We reach the same conclusion here.

At one point during the CDP proceeding, petitioners requested lien subordination to facilitate their securing a home equity loan from their bank. Section 6325(d)(2) allows the IRS to subordinate a Federal tax lien if it concludes (among

[*15] other things) that "the amount realizable by the United States * * * will ultimately be increased * * * and that the ultimate collection of the tax liability will be facilitated by such subordination." An SO is authorized to approve subordination or withdrawal of a Federal tax lien in certain limited circumstances, see Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178, 185 (2011); IRM pt. 5.17.2.8.6(3) (Dec. 12, 2014), but only if she determines that "it is in the best interest of the government," IRM pt. 5.12.10.6 (Oct. 14, 2013).

However, petitioners never submitted the required application for lien subordination. Indeed, they effectively withdrew that request by informing the SO that their bank would not cooperate in an application for lien subordination. Finding no abuse of discretion in this or any other respect, we will grant respondent's motion for summary judgment, deny petitioners' cross-motion, and sustain the collection action.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.