T.C. Memo. 2019-60

UNITED STATES TAX COURT

KEVIN SCOTT MILLEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15726-18L.                    Filed May 30, 2019.

Kevin Scott Millen, pro se.

<u>Amber B. Martin</u> and <u>William Walter Kiessling</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal

---

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The IRS initiated the collection action with respect to petitioner's Federal income tax liability for 2014. Before the Court are the parties' cross-motions for summary judgment. We will grant respondent's motion and deny petitioner's.

Background

The following facts are based on the parties' pleadings and motion papers, including the declaration and exhibits accompanying respondent's motion. See Rule 121(b). Petitioner resided in Tennessee when he filed his petition.

On April 30, 2015, petitioner filed a delinquent Form 1040A, U.S. Individual Income Tax Return, for 2014. He reported, but did not pay, a tax liability of $3,083. On October 6, 2015, he entered into an installment agreement (IA) under which he was to pay the balance of his 2014 tax liability in monthly installments of $40. By its terms, the IA was to remain in effect only so long as petitioner stayed current on his other Federal tax obligations.

In April 2017 petitioner filed his 2016 tax return, on which he reported, but did not pay, the balance shown as due. Concluding that petitioner's failure to pay the tax due violated the terms of the IA, the IRS terminated that agreement in June 2017 and proceeded to collect the balance of his 2014 liability. On September 21,

[*3] 2017, the IRS mailed petitioner a Letter 11, Notice of Intent to Levy and Notice of Your Right to a Hearing, showing a 2014 balance due of $3,002.

Petitioner timely requested a CDP hearing, indicating that he could not pay that amount. He stated that he "ha[d] never missed a payment" on the IA, speculating that if the IRS had not received the money, it was the fault of his local post office. He did not address the actual reason the IRS had terminated his IA, namely, that he had failed to keep current with his ongoing tax obligations.

The IRS assigned the case to a settlement officer (SO) from the IRS Appeals Office. The SO reviewed petitioner's tax records and determined that he had not filed a tax return for 2015. On April 12, 2018, she sent petitioner a letter scheduling a telephone hearing for May 15, 2018. She informed him that, if he wished to pursue a new IA, he needed to submit Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and copies of signed tax returns for 2015 and 2017, the latter of which was due for filing (absent extension) on April 17, 2018. The SO set deadlines of April 26, 2018, for submitting the financial information and May 3, 2018, for submitting the tax returns.

Petitioner called the SO several days later and insisted that he had filed a return for 2015, as well as an amended return for 2014. The SO replied that the IRS had no record of receiving either and asked petitioner to submit copies (or

[*4] new versions) of both.  At petitioner's request, the SO sent him an account transcript for 2014.  She enclosed with the transcript a letter informing him that he had also accrued for 2014 a liability of $263 for an individual shared responsibility payment (ISRP) under section 5000A(b) because he had failed to maintain minimum essential health insurance coverage.[2]

Petitioner informed the SO that he wished to dispute the ISRP liability as well as the liability that was the subject of the levy notice.  On April 24, 2018, he faxed to her the following documents:  (1) an incomplete 2015 return, signed and dated April 16, 2018; (2) a letter asking the SO to investigate the U.S. Postal Service (USPS) for the supposed loss of his original 2015 return; and (3) an undated health insurance card bearing his name but showing no description of coverage and no effective date.

The CDP hearing was held as scheduled on May 15, 2018.  The SO asked petitioner to clarify some entries on his recently submitted 2015 return.  He inter-

---

[2]Under the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 1501(b), 124 Stat. at 244-249 (2010) (codified at sec. 5000A), a taxpayer accrues an ISRP liability if he or she fails to maintain adequate health insurance coverage (called "minimum essential coverage") for a particular year.  See sec. 5000A(a), (f)(3).  Section 5000A(c), which sets forth the formula for calculating the amount of ISRP liability, was amended in 2017 such that taxpayers generally will not accrue ISRP liability for periods after 2018.  See Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, sec. 11081, 131 Stat. at 2092.

**[\*5]** rupted her inquiry by insisting that he had timely submitted an earlier version of his 2015 return. Relying on his account transcript, the SO stated that the IRS had no record of an earlier filed return. In any event, she explained that the IA had been terminated, not for petitioner's failure to file a 2015 return, but for his failure to pay timely his 2016 tax liability. The SO expressed willingness to consider a new IA, but emphasized that petitioner first needed to clear up some ambiguities on his recently submitted 2015 tax return and submit a copy of his 2017 return, which had been due for filing one month previously. At this point petitioner accused the SO of lying, declared that he would take his case to court, and abruptly ended the call.

The SO reviewed the administrative file, verified that petitioner's 2014 income tax liability had been properly assessed, and confirmed that all other requirements of law and administrative procedure had been satisfied. She concluded that: (1) petitioner could not challenge his self-reported liability for 2014 because he had failed to submit basic supporting evidence (e.g., an amended return for 2014); (2) she lacked jurisdiction to consider petitioner's challenge to the $263 ISRP liability because "it was not part of the * * * Notice of Intent to Levy dated September 21, 2017"; and (3) she could not consider a collection alternative because

**[\*6]** petitioner had submitted an incomplete 2015 return and refused to supply the information necessary to complete it.

On August 2, 2018, the IRS issued a notice of determination sustaining the proposed levy, and petitioner timely sought review in this Court. On August 27, 2018, petitioner filed a motion asserting that the IRS was "making mistakes on not giving me my money," demanding that he be paid "a fee of $500,000 plus the ability to never have to file taxes again." We denied that motion two days later.

On February 6, 2019, respondent filed a motion for summary judgment. On February 15, 2019, petitioner submitted documents that we filed as a response to respondent's motion and a cross-motion for summary judgment. Petitioner's cross-motion reiterates his demand that the IRS be ordered to pay him $500,000 and that he be granted relief from any future tax obligations.

## Discussion

### A.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992),

**[\*7]** aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. We conclude that the question before us may appropriately be adjudicated summarily.

B.      Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Living Care Alts. of Utica, Inc. v. United States, 411 F.3d 621, 626 n.5 (6th Cir. 2005). Where the taxpayer's underlying liability is not before us, we review the IRS' decision for abuse of discretion only. Goza v. Commissioner, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is "arbitrary, capricious, or without sound basis in fact or law." Holloway v. Commissioner, 322 F. App'x 421, 423 (6th Cir. 2008) ("We have held that an administrative agency abuses its discretion where there is no evidence to

**[\*8]** support its decision, or the agency misapplies the law."), aff'g T.C. Memo. 2007-175.

C.     Underlying Liability

A taxpayer can challenge the existence or amount of an underlying liability if it is for a "tax period specified on the CDP Notice," sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., and if he had no prior opportunity to dispute it, Sego v. Commissioner, 114 T.C. 604, 609 (2000).  However, "[a] taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."  Thompson v. Commissioner, 140 T.C. 173, 178 (2013); see Giamelli v. Commissioner, 129 T.C. 107, 114 (2007).  "'An issue is not properly raised if the taxpayer fails * * * to present * * * any evidence with respect to that issue after being given a reasonable opportunity' to do so."  Moriarty v. Commissioner, T.C. Memo. 2017-204, 114 T.C.M. (CCH) 441, 443 (quoting section 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.), aff'd per order, 2018 WL 4924349 (6th Cir. Sept. 19, 2018); see Obeirne v. Commissioner, T.C. Memo. 2018-210, at *9.

The SO correctly determined that petitioner could not challenge the $3,083 income tax liability that he reported on his delinquent 2014 return.  He did not submit an amended 2014 return showing what he believed his correct tax liability

**[*9]** to be. Nor did he submit any other evidence relevant to his 2014 tax liability. Indeed, he had previously executed an IA in which he agreed to pay that liability in full.

The SO likewise did not err in declining to consider petitioner's challenge to his $263 ISRP liability for 2014. Whether or not the SO had jurisdiction to consider this issue,[3] petitioner failed to submit sufficient evidence to raise a proper challenge. A determination of ISRP liability for a nonexempt, nonincarcerated taxpayer turns solely on whether that person had minimum essential coverage during the year in question. See sec. 5000A(a), (d). The only relevant document petitioner submitted to the SO was an undated insurance card, faxed to the IRS in April 2018, that had no description of coverage, no effective date, and no indication that petitioner was actually covered by insurance during 2014.

---

[3]The IRS is generally foreclosed from seeking to collect ISRP liabilities by lien or levy. Sec. 5000A(g)(2)(B). The SO determined that she lacked jurisdiction to consider petitioner's challenge to his 2014 ISRP liability, even though it had been assessed for the same tax year as the income tax liability in question, because it was not assessed until after the issuance of the levy notice on September 21, 2017. We have no need in this case to consider the correctness of that conclusion or (more generally) the circumstances in which ISRP liabilities may properly be disputed in a CDP hearing.

**[\*10]** In his motion for summary judgment, respondent urged that petitioner failed to mount a proper challenge to his underlying liability for 2014. Petitioner declined to respond to that contention, asserting no specific facts regarding insurance coverage that could give rise to a material factual dispute. See Rule 121(d). Concluding as we do that petitioner did not properly raise his underlying liability at the CDP hearing, we review the SO's action for abuse of discretion only. See Thompson, 140 T.C. at 178; Alamo v. Commissioner, T.C. Memo. 2017-215, 114, 114 T.C.M. (CCH) 489, 496, aff'd, 751 F. App'x 583 (5th Cir. 2019).

D.    Abuse of Discretion

In determining whether the SO abused her discretion we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure had been met, (2) considered any relevant issues petitioner raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).

Putting aside his frivolous arguments, petitioner advanced two contentions at the CDP hearing. First, he asserted that he had made all required monthly pay-

[*11] ments under his IA, that if the IRS had not received these payments it was USPS' or the IRS' fault, and that the IRS had thus erred in terminating that agreement. But the SO never contended that petitioner had failed to make the required $40 monthly payments. Rather, the IRS terminated the IA because petitioner had forfeited his entitlement by becoming delinquent in his tax obligations for 2016.

Second, petitioner contended that the IRS had failed to process his 2015 tax return, which he insisted he had timely filed. The SO reviewed his account transcripts and rejected this contention as unfounded. An SO does not abuse her discretion in relying on certified tax transcripts where the taxpayer has shown no evidence of a procedural irregularity. See Roberts v. Commissioner, 329 F.3d 1224, 1228 (11th Cir. 2003), aff'g per curiam 118 T.C. 365 (2002); Craig v. Commissioner, 119 T.C. 252, 262 (2002); Davis v. Commissioner, 115 T.C. 35, 40-41 (2000); May v. Commissioner, T.C. Memo. 2014-194, 108 T.C.M. (CCH) 324, 326, supplemented by T.C. Memo. 2016-43, aff'd sub nom. Best v. Commissioner, 702 F. App'x 615 (9th Cir. 2017). Petitioner has shown no procedural irregularity and has supplied no reason to believe that the IRS lost or declined to process a timely filed 2015 return. In any event, in determining whether petitioner was in compliance with his ongoing tax obligations, the SO was willing to consider the revised 2015 return (signed and dated April 16, 2018) that petitioner submitted at

[*12] the CDP hearing. But this return was incomplete, and petitioner adamantly refused to answer the SO's questions about its ambiguities.

Finally, the SO did not abuse her discretion by declining to consider a collection alternative. Petitioner terminated the CDP hearing peremptorily, and the SO had no obligation to offer a collection alternative to an unwilling recipient. See Alamo, 114 T.C.M. (CCH) at 497 ("A taxpayer may not refuse to deal with the IRS Office of Appeals * * * and then argue that it abused its discretion in issuing an unfavorable determination."); Cavazos v. Commissioner, T.C. Memo. 2008-257, 96 T.C.M. (CCH) 341, 344 ("It is not an abuse of discretion for an appeals officer to sustain a levy and not consider any collection alternatives when the taxpayer has proposed none."). Petitioner also refused to submit the required financial information, including a Form 433-A, and that refusal alone is grounds for an Appeals officer to reject collection alternatives and sustain the proposed collection action. Solny v. Commissioner, T.C. Memo. 2018-71, at *10; Cavazos, 96 T.C.M. (CCH) at 343. Finding no abuse of discretion in any respect, we will grant respondent's motion for summary judgment, deny petitioner's cross-motion, and sustain the collection action.

[*13]  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.