T.C. Memo. 2019-92

UNITED STATES TAX COURT

DANNY R. LOVE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3788-18L.                    Filed July 22, 2019.

Danny R. Love, pro se.

<u>Martha J. Weber</u> and <u>William W. Kiessling</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of a determination by

the Internal Revenue Service (IRS or respondent) regarding collection action.

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times.  We round all monetary amounts to the nearest dollar.

**[*2]** Petitioner contends that the IRS Appeals Office erred in rejecting his proposed offer-in-compromise (OIC) and in declining to abate interest and failure-to-pay additions to tax.  Finding no evidence of error, we will sustain the determination.

## FINDINGS OF FACT

This case was tried in Memphis, Tennessee.  The parties submitted at trial two stipulations of fact with attached exhibits that are incorporated by this reference.  Those stipulations include the entire administrative record of the CDP case.[2]  Petitioner resided in Tennessee when he petitioned this Court.

Petitioner filed Federal income tax returns for 2012, 2013, and 2014.  For 2012 he did not pay the full amount of tax shown as due on his return.  The IRS assessed for that year the tax he reported plus interest.[3]  For 2013 and 2014 petitioner likewise failed to pay the tax shown as due on his returns.  The IRS assessed those amounts plus interest and additions to tax for failure to pay.  As of December 2016, petitioner's outstanding liability for these three years was $39,713.

---

[2]Petitioner objected to the admission of several of his IRS account transcripts on grounds of relevancy.  We believe the transcripts to be relevant in determining petitioner's eligibility for the IRS' "first time abate" policy.  See infra pp. 8-9.  We accordingly overruled petitioner's objections.

[3]The IRS initially assessed for 2012, but later abated, additions to tax for failure to file and failure to pay.  They are no longer in issue.

[*3]   In an effort to collect these unpaid liabilities the IRS sent petitioner, on December 20, 2016, a Notice of Federal Tax Lien Filing and Your Right to a Hearing.  On January 18, 2017, petitioner submitted a timely request for a CDP hearing, expressing interest in an OIC and withdrawal of the NFTL.  A week later he sent the IRS a letter accompanied by a Form 433-D, Installment Agreement, proposing payments of $300 per month.  He included information about his finances and explained that he wished to pay $300 per month until the parties could reach agreement on an OIC.

After receiving petitioner's case a settlement officer (SO1) from the IRS Appeals Office reviewed his administrative file and confirmed that the tax liabilities in question had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.  On February 22, 2017, petitioner submitted a Form 656, Offer in Compromise, proposing to settle his outstanding tax liabilities for 2012-2016 for $1,500.

The parties agreed to hold a telephone CDP hearing on April 3, 2017.  SO1 outlined the CDP process and petitioner's appeal rights.  She explained that the IRS Centralized Offer in Compromise unit (COIC) would investigate and consider his OIC proposal.  If the COIC rejected that proposal, the case would be returned to her for further review.

**[*4]**    On August 29, 2017, SO1 received the case file back from COIC.  It recommended rejection of petitioner's OIC, finding that he had failed to substantiate many reported expenses, that he had the ability to pay the tax liabilities in full, and that there were no special circumstances warranting a hardship exception.

On September 1, 2017, SO1 called petitioner to advise him of COIC's conclusion.  She explained that some of his reported expenses were not allowable but that others might be allowed if he could substantiate them.  Petitioner supplied additional information, and SO1 then revised COIC's calculations.  She adjusted petitioner's allowable expenses upward by allowing vehicle operating costs on two more vehicles and increasing allowable health insurance, life insurance, and tax expenses to more than double the amounts petitioner had originally reported.  But she declined to include as an allowable expense monthly tuition of $1,162 that petitioner paid to enable his children to attend a private high school.

SO1's revised calculations showed that petitioner had monthly household income of $12,758 and allowable monthly expenses of $11,046, yielding disposable monthly income of $1,712.  After reviewing petitioner's reported assets, SO1 concluded that he had a reasonable collection potential (RCP) of $217,438, consisting of equity in assets of $42,814 plus the ability to pay $174,624 in future monthly installments.  Finding no doubt as to collectibility and no special

[*5] circumstances justifying a hardship exception, SO1 rejected petitioner's proposed OIC.

On September 14, 2017, SO1 informed petitioner that his OIC would be rejected but proposed an installment agreement requiring payments of $600 per month. Petitioner stated that he could not afford that amount and instead proposed a single lump-sum payment of $5,000. SO1 replied that she could not accept that offer because petitioner had the financial ability to pay his tax liabilities in full.

In October 2017 the case was reassigned to a new settlement officer, SO2. Petitioner submitted information seeking to justify withdrawal of the NFTL filing. SO2 replied that she would recommend withdrawal if petitioner executed a direct-debit installment agreement. The parties ultimately agreed on an installment agreement under which petitioner would pay $300 per month beginning in January 2018, with monthly payments increasing to $600 in 2020 and to $700 in 2022. That installment agreement was executed by petitioner and accepted by the IRS, and the NFTL filing was withdrawn.

Petitioner also requested abatement of assessed interest for all three years and abatement of the additions to tax for 2013 and 2014. SO2 explained that he had shown no grounds justifying abatement of interest but invited him to supply documentation supporting abatement of the additions to tax. Petitioner submitted

**[*6]** a Form 843, Claim for Refund and Request for Abatement, arguing that his failures to pay were excusable because he had been forced to use his retirement savings to maintain his family's standard of living.

SO2 reviewed petitioner's accounts and found that he had withdrawn $2,741 and $89,900 from his retirement account in 2013 and 2014, respectively. She noted that he had neglected to have any Federal income tax withheld from the 2014 distribution. On the basis of petitioner's reported income for these years ($128,873 and $191,196, respectively) and his overall financial situation, SO2 determined that he could pay his Federal tax liabilities on time. Concluding that reasonable cause for failure to pay did not exist, SO2 denied petitioner's abatement request. Noting that the IRS had assessed failure-to-pay additions to tax against petitioner on three prior occasions--for 2009, 2010, and 2011--SO2 further determined that she could not abate the 2013 and 2014 additions to tax under an administrative "first time abatement" policy.

On January 30, 2018, the IRS issued petitioner a notice of determination. It noted that the NFTL filing, while proper originally, "[wa]s not sustained and ha[d] been withdrawn" following execution of the direct-debit installment agreement. The notice explained the reasons for denying petitioner's OIC and his requests for

**[\*7]** abatement of assessed interest and failure-to-pay additions to tax.[4] Petitioner timely petitioned this Court for review, contending that the Appeals Office erred in rejecting his proposed OIC, in declining to abate interest for all three years, and in declining to abate the additions to tax for 2013 and 2014.

## OPINION

### A.    Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of the underlying tax liability is at issue, we review the Commissioner's determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where there is no dispute concerning the underlying tax liability, we review the IRS action for abuse of discretion. Id. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

---

[4]The notice includes a typographical error, referring to the additions to tax as having been assessed for "failure to file" as opposed to "failure to pay."

[*8]   "A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect." Dykstra v. Commissioner, T.C. Memo. 2017-156, 114 T.C.M. (CCH) 183, 187.  Nothing in the record indicates that petitioner had a prior opportunity to challenge his liability for the failure-to-pay additions to tax, and we thus review petitioner's request for redetermination of this liability de novo. Ibid.  We review under an abuse-of-discretion standard SO1's decision to reject petitioner's OIC.  See Johnson v. Commissioner, 136 T.C. 475, 488 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). SO2's denial of petitioner's request for abatement of interest is likewise reviewed for abuse of discretion only.  See sec. 6404(h)(1); A-Valey Eng'rs, Inc. v. Commissioner, T.C. Memo. 2012-199, 104 T.C.M. (CCH) 69, 72.

B.    Underlying Tax Liability

Petitioner disputes his underlying liability for the 2013-2014 additions to tax.  He first contends that SO2 should have found him eligible for the IRS "first time abate" policy, which offers an administrative waiver of additions to tax for failure to pay a tax liability on time.  See Internal Revenue Manual (IRM) pt. 20.1.1.3.3.2.1 (Nov. 21, 2017); see also Laidlaw v. Commissioner, T.C. Memo. 2017-167.  To qualify for this waiver, the taxpayer must not have had any unreversed additions to tax imposed under section 6651 for any of the preceding

[*9] three years.  See IRM pt. 20.1.1.3.3.2.1(4).  Petitioner's account transcripts for 2009-2011 showed that he had been assessed a failure-to-pay addition to tax for each of those years and that none of these assessments had been abated or reversed.  SO2 thus correctly determined that petitioner was ineligible for "first time abatement."[5]

SO2 considered in the alternative whether abatement of the failure-to-pay additions to tax could be justified on grounds of reasonable cause.  See sec. 6651(a)(2).  To prove reasonable cause for failure to pay, "the taxpayer must show that he exercised ordinary business care and prudence in providing for payment of his tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if he paid the tax on the due date."  Hardin v. Commissioner, T.C. Memo. 2012-162, 103 T.C.M. (CCH) 1861, 1863 (citing section 301.6651-1(c)(1), Proced. & Admin. Regs.).  SO2 noted that petitioner's failure to pay for 2014 was attributable in part to his failure to have any Federal income tax withheld from his $89,900 retirement plan distribution.  Her overall analysis of petitioner's income

---

[5]The notice of determination mistakenly recited that petitioner had been assessed "failure to file" additions to tax for 2009-2011.  See supra note 4.  This typographical error caused some confusion for petitioner, who emphasized in his petition that he had consistently filed Federal income tax returns.  There are no failure-to-file additions to tax for 2013-2014, and there were none for 2009-2011.  The IRS had previously abated additions to tax for 2012, see supra note 3, and they did not enter into SO2's analysis.

**[*10]** and assets revealed that he could pay his 2013 and 2014 tax liabilities on time and would not have suffered undue hardship by doing so. She thus determined correctly that he had not shown reasonable cause for failure to pay.

## C.     Abuse of Discretion

In reviewing an SO's determinations, we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record reveals that SO1 conducted a thorough review of petitioner's account, determined that the liabilities in question had been properly assessed, and verified that all other requirements of applicable law and administrative procedure were followed.

### 1.     Offer-in-Compromise

Petitioner's main contention at trial was that SO1 abused her discretion in rejecting his proposed OIC. The IRS may compromise an outstanding tax liability on three grounds: (1) doubt as to liability, (2) doubt as to collectibility, or (3) the promotion of effective tax administration. See sec. 7122(a); sec. 301.7122-1(b),

[*11] Proced. & Admin. Regs. The IRS may compromise a tax debt on the basis of doubt as to collectibility where the taxpayer's assets and income make it unlikely that the IRS will be able to collect the entire balance. Sec. 301.7122-1(c)(2), Proced. & Admin. Regs.

"[A]n offer to compromise based on doubt as to collectibility will be acceptable only if the offer reflects the reasonable collection potential of the case (i.e., that amount * * * that the IRS could collect through means such as administrative and judicial collection remedies)." Murphy, 125 T.C. at 309. In reviewing SO1's determination to reject an OIC, we do not make an independent evaluation of what would be an acceptable collection alternative. Id. at 320. Rather, our review is limited to determining whether SO1 abused her discretion. Id. at 318.

Petitioner submitted an OIC based on doubt as to collectibility. At that time his tax liabilities for 2012-2014 were almost $40,000. He submitted a Form 656 proposing to compromise those liabilities for $1,500 and later increased that offer (orally) to $5,000. But after examining petitioner's assets and income, SO1 determined that he had an RCP of $217,438--an amount vastly exceeding the offers he had made. The IRM instructs settlement officers that an OIC proposing a payment substantially below the taxpayer's RCP should normally be rejected. IRM pt. 5.8.4.9 (May 10, 2013). "[A] settlement officer does not abuse her discretion

[*12] when she relies on relevant IRM provisions in evaluating collection alternatives." Moriarty v. Commissioner, T.C. Memo. 2017-204, 114 T.C.M. 441, 444, aff'd per order, 122 A.F.T.R.2d 2018-5984 (6th Cir. 2018); see Eichler v. Commissioner, 143 T.C. 30, 39 (2014).

At trial petitioner contended that the analysis of his monthly disposable income did not take into account all of his expenses, chiefly his children's private school tuition.[6] But the IRM instructs settlement officers that private school tuition is an allowable expense only if "required for a physically or mentally challenged child and no public education providing similar services is available." IRM pt. 5.15.1.10(3) (Nov. 17, 2014).[7] In evaluating OICs in particular, "[e]xpenses for dependents to attend * * * private schools will not be allowed unless the dependents have special needs that cannot be met by public schools." IRM pt.

---

[6]Petitioner also contended that SO1 did not take proper account of his credit card obligations. The IRM provides that "[c]redit cards are generally considered a method of payment, rather than a specific expense." IRM pt. 5.15.1.10(3) (Nov. 17, 2014). "[P]ayments for the portion of the credit card debt reflecting necessary living expenses are provided for as allowable expenses." Ibid. The SO properly allowed for the necessary living expenses paid for with petitioner's credit card. See Rosendale v. Commissioner, T.C. Memo. 2018-99.

[7]The quoted language appeared in the cited portion of the IRM during 2016, when the SOs conducted their review. In 2018 the IRM was updated; the quoted language now appears at IRM pt. 5.15.1.11 (Aug. 29, 2018).

**[\*13]** 5.8.5.22.4(4) (Sept. 30, 2013); <u>see</u> <u>Moriarty</u>, 114 T.C.M. (CCH) at 444.

Petitioner does not contend that his children's private school tuition fits these

criteria.

In any event, any error by SO1 in calculating petitioner's monthly dispos-

able income was harmless in evaluating his OIC.  His equity in assets alone,

$42,814, vastly exceeded his OIC.  And the installment agreement he actually

executed showed that he had the financial ability to pay his assessed tax liabilities

in full.  For all these reasons, we conclude that SO1 did not abuse her discretion in

rejecting his OIC.[8]

2.     Abatement of Interest

Interest on tax liabilities arises automatically under section 6601.  Section

6404(e)(1)(B) authorizes the IRS to abate assessed interest on "any payment * * *

to the extent that any unreasonable error or delay in such payment is attributable to

* * * [an IRS] officer or employee being erroneous or dilatory in performing a

ministerial or managerial act."  A managerial act is "an administrative act * * *

involving the temporary or permanent loss of records or the * * * management of

---

[8]At trial petitioner indicated that his household may have increased medical expenses going forward.  If petitioner's financial circumstances have changed, he is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an OIC or a revised installment agreement, supported by the necessary financial information.

[*14] personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. A ministerial act is a "procedural or mechanical act that does not involve the exercise of judgment or discretion." Id. subpara. (2).

Petitioner did not identify, during the CDP process or at trial, any unreasonable error or delay by any IRS officer or employee in performing any ministerial or managerial act. The CDP process as a whole was completed in about a year, including a five-month period while COIC reviewed petitioner's OIC. Petitioner raised different issues at different stages of the process and engaged in protracted negotiations concerning the installment agreement and the OIC. Both SOs responded promptly to his communications, and their consideration of his proposals "involve[d] the exercise of judgment or discretion." Ibid. We find that SO2 did not abuse her discretion in denying petitioner's request for abatement of interest.

To reflect the foregoing,

Decision will be entered for

respondent.