T.C. Memo. 2015-86

UNITED STATES TAX COURT

ANDREW M. HULL AND VICKIE J. HULL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7147-14L.                    Filed May 5, 2015.

<u>William J. Curosh</u>, for petitioners.

<u>Doreen Marie Susi</u> and <u>Brandon A. Keim</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Petitioners, husband and wife, appeal a determination by the Internal Revenue Service (IRS or respondent) to sustain a proposed levy to collect their unpaid Federal income tax for 2007, 2008, 2009, 2010, and 2011 (years at issue).  The issue involved is whether, following a collection due process

[*2] hearing pursuant to the requirements of section 6330(c), the IRS settlement officer's determination constituted an abuse of discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

FINDINGS OF FACT

At the time petitioners filed their petition, they resided in Arizona.

During the years at issue petitioner husband was a self-employed attorney who represented property management companies and owners of single-family homes in landlord and tenant disputes. Petitioner husband's law practice was successful, earning him substantial income each year.

Petitioners timely filed Federal income tax returns for 2007 and 2008. The IRS' examination of these returns resulted in agreed-upon deficiencies and section 6662 accuracy-related penalties totaling $269,972 and $354,277 for 2007 and 2008, respectively. On November 15, 2010, the IRS assessed these amounts.[1]

Petitioners also timely filed Federal income tax returns for 2009, 2010, and 2011. On November 22, 2010, the IRS assessed the tax reported on petitioners' 2009 return as well as a section 6651(a)(2) addition to tax for failure to timely pay

---

[1]Regarding their 2007 and 2008 tax years, petitioners made estimated tax payments totaling $27,000 and $30,000, respectively.

[*3] their tax and accrued interest. The total assessed amount was $212,306.[2] On May 30, 2011, and July 16, 2012, the IRS assessed the tax reported on petitioners' 2010 and 2011 returns, respectively, as well as section 6651(a)(2) additions to tax for failure to timely pay tax, section 6654 additions to tax for failure to properly make estimated tax payments, and accrued interest. The total assessed amounts for 2010 and 2011 were $148,693 and $172,565, respectively.[3]

In April 2011 the IRS and petitioners entered into an installment agreement with respect to petitioners' outstanding 2007-10 tax liabilities. This agreement was later revoked because the IRS determined petitioners were in default.[4]

On May 18, 2012, the IRS sent petitioners separate Letters 1058A, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, with

---

[2]Regarding their 2009 tax year, petitioners made estimated tax payments totaling $25,000 as well as a $10,000 payment that accompanied their return.

[3]Regarding their 2010 and 2011 tax years, petitioners made estimated tax payments totaling $55,000 and $45,000, respectively.

[4]The parties disagree as to why the installment agreement was revoked. Petitioners allege that it was revoked because they failed to provide the IRS with an updated profit and loss statement with respect to petitioner husband's law practice. The IRS, on the other hand, alleges that petitioners' monthly installment payment was set to increase in November 2011 as part of the agreement and that petitioners failed to increase their payment.

[*4] respect to years 2007, 2008, 2009, and 2010; on July 30, 2012, the IRS sent petitioners additional Letters 1058A with respect to 2011.

On June 13, 2012, the IRS received from petitioners a Form 12153, Request for a Collection Due Process or Equivalent Hearing, indicating that they sought an installment agreement with respect to their tax liabilities for 2007, 2008, 2009, and 2010. On August 23, 2012, the IRS received from petitioners an additional Form 12153, indicating they wished to enter into an installment agreement with respect to their tax liability for 2011.[5] Although the IRS originally assigned two separate settlement officers to petitioners' cases--one for years 2007-10 and another for 2011--the cases were combined at the request of petitioners' representative, Mr. Curosh.

On August 14, 2012, Settlement Officer James Wood (SO Wood) conducted a face-to-face conference with petitioner husband, Mr. Curosh, and petitioner husband's law partner, Ms. Holland. During the conference Mr. Curosh informed SO Wood that petitioners did not wish to contest their tax liabilities for 2007-11 and that petitioners agreed the IRS had followed all legal and procedural requirements necessary in proposing a levy. Petitioner husband informed SO

[5]Petitioners also indicated that they wished to have a notice of Federal tax lien discharged by using "cabin proceeds" to pay the liability. The notice of Federal tax lien is not at issue in this proceeding.

**[*5]** Wood that he was making estimated tax payments of $5,000 per month in an attempt to comply with his tax obligations for the current year. SO Wood requested a current profit and loss statement and a current balance sheet pertaining to petitioner husband's law practice; he advised petitioners to continue making, at a minimum, the $5,000-per-month estimated tax payments until he had an opportunity to review the financial information provided.

On March 24, 2013, SO Wood became Acting Appeals Team Manager; accordingly, petitioners' collection due process case was transferred to Settlement Officer Irma Okubena (SO Okubena).

On June 28, 2013, SO Okubena reviewed the administrative file relating to petitioners' case and determined that although petitioners had made estimated tax payments of $45,000 with respect to their 2012 tax liability, that amount appeared to be substantially less than what petitioners had owed for previous years, namely 2007-11. SO Okubena recorded in the case activity records that petitioners' outstanding tax liabilities for 2007-11 were the result of their failure to pay estimated tax sufficient to satisfy the amount of tax on the income generated by petitioner husband's law practice.

On August 19, 2013, SO Okubena reviewed the IRS transcripts relating to petitioners. The transcripts revealed that petitioners had made estimated tax

[*6] payments of $5,000 in January, February, March, May, and June 2013 and

$6,000 in July and August 2013.[6] After reviewing the information in the file,[7] SO

Okubena wrote in the case activity records:

> TP is living above his means. TP has residence which has equity of over $200,000, a cabin * * * [in Arizona] with about $100,000 equity, a property * * * [in Arizona], several vehicles, 401K with approx. $80,000, multiple bank accounts * * *.
>
> Tps expenses are very high & I am sure that he has been instructed to reduce his living expenses but does not appear to have done so. He apparently tried to borrow on equity in 2011 but was denied.

On the same date SO Okubena called Mr. Curosh to request current

financial statements regarding petitioner husband's law practice. Mr. Curosh

agreed to provide SO Okubena with the financial statements but requested an

additional face-to-face conference, which SO Okubena scheduled for September

12, 2013. SO Okubena and Mr. Curosh discussed petitioners' current assets, and

Mr. Curosh informed SO Okubena that petitioners had the same assets as they had

---

[6]SO Okubena determined that these payments were estimated tax payments pertaining to petitioners' 2013 tax year.

[7]The record does not show the origin of the financial information SO Okubena reviewed other than a notation that it was provided to an RO (presumably a revenue officer) "back in 2011 * * * [that] came in with CDP case." SO Okubena noted that "apparently SO Wood did not review this information at conference on 08/2012." The Court infers that this information was provided to an IRS revenue officer when petitioners submitted their installment agreement request in 2011.

[*7] had in 2011 except that one of the properties was to be sold to their children and one of the properties was to be "let go * * * since * * * [petitioners were] not benefitting by it." SO Okubena informed Mr. Curosh that she would need to know petitioners' tax liability for 2012 because if the $45,000 in estimated tax payments petitioners had made for that year was insufficient to satisfy their 2012 tax liability then it would "do no good to set up * * * [an installment agreement]." SO Okubena informed Mr. Curosh that petitioners needed to increase the amounts of their estimated tax payments if the total of the payments being made was insufficient to meet each year's tax liability.

On September 12, 2013, SO Okubena, Mr. Curosh, petitioners, and petitioner husband's law practice bookkeeper participated in the scheduled face-to-face conference. During the conference SO Okubena inquired as to whether petitioners had filed their 2012 return and whether they would owe any tax for that year. Mr. Curosh told SO Okubena that petitioners had not yet filed their 2012 return but they would owe approximately $46,674 in tax. He further told SO Okubena that petitioners would owe approximately $75,000 for 2013 and that they would make estimated tax payments totaling $67,000 with respect to that year. SO Okubena informed petitioners that their estimated tax payments of $6,000 per month were insufficient to satisfy both their current and estimated future tax

**[*8]** obligations and that petitioner husband "should be on wages, not draws." Mr. Curosh told SO Okubena that he agreed that petitioner husband should become a salaried employee of the law firm and that he was working with petitioner husband as to the amount of tax to be withheld as well as the payment of estimated tax. Mr. Curosh also told SO Okubena that petitioner husband would begin making estimated tax payments of $7,000 per month.

SO Okubena and Mr. Curosh then discussed petitioners' current financial situation and a proposed installment agreement. Although Mr. Curosh had a prepared Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, he told SO Okubena he wanted to "clean it up" and that he would provide her with a new one in two to three weeks. SO Okubena asked Mr. Curosh how much petitioners proposed to pay as a monthly installment; Mr. Curosh informed her that petitioners wished to make monthly payments of $2,000. SO Okubena told Mr. Curosh that $2,000 per month would be too low. She noted that petitioners were paying the Arizona Department of Revenue $4,000 per month to satisfy a $29,000 State income tax liability but wanted to pay the IRS only $2,000 per month on a tax obligation of approximately $1 million. The face-to-face conference concluded with SO Okubena's stating that she would determine the amount petitioners should pay each month after reviewing a recently provided

[*9] profit and loss statement for petitioner husband's law practice and the updated Form 433-A.[8]

On September 17, 2013, SO Okubena called Mr. Curosh and indicated that petitioners needed to satisfy their 2012 tax liability in full before entering into an installment agreement. She suggested that petitioners use funds from petitioner husband's section 401(k) plan account to pay this tax liability. Mr. Curosh disagreed that petitioners should be required to use section 401(k) plan account funds to pay their 2012 tax liability.

On September 26, 2013, SO Okubena received a letter from Mr. Curosh and attached documentation, including a copy of petitioners' filed 2012 return. According to SO Okubena's review of the return, petitioners had gross income of $459,931, tax owed of $120,284 and estimated tax payments totaling $55,018, resulting in an outstanding tax liability of $66,242.[9] By this time, SO Okubena had become aware that petitioners had satisfied their 2012 Arizona State income tax liability. In his letter to SO Okubena Mr. Curosh indicated that petitioners

---

[8]Petitioners provided SO Okubena with a Quickbooks profit and loss statement, but SO Okubena requested petitioners to categorize certain expenses and resubmit it to her.

[9]We are mindful that there is a math error--subtracting $55,018 of estimated tax payments from $120,284 of tax owed equals $65,266, not $66,242.

[*10] would potentially owe $132,400 in Federal tax for 2013. SO Okubena recorded in the case activity records that petitioners had made only $43,000 in estimated tax payments with respect to 2013.

On November 19, 2013, SO Okubena received a package from Mr. Curosh containing a cover letter dated October 28, 2013, real estate listings for petitioners' residence and a vacation home, and a completed Form 433-A. The real estate listings showed that petitioners sought $849,500 for their residence and $439,000 for their vacation home. SO Okubena recorded in the case activity records that petitioners had outstanding mortgages on the properties: $128,000 on their residence and $105,000 on their vacation home. After reviewing the Form 433-A and allowing all of their claimed expenses, SO Okubena determined that petitioners had a monthly "net disposable income" of $15,471.

On November 21, 2013, SO Okubena called Mr. Curosh, informing him that she would propose an installment agreement requiring monthly payments of $10,000 to $12,000 and an increase of $5,000 per month starting in June 2014. SO Okubena informed Mr. Curosh that there was a "bigger issue"--petitioners' failure to make sufficient estimated tax payments to cover their 2013 Federal tax liability. Specifically, SO Okubena told Mr. Curosh that the $43,000 of estimated tax payments that petitioners had made so far was insufficient to cover their 2013

[*11] tax liability and that she would not agree to their installment agreement request unless they increased the amount of their monthly estimated tax payment by December 31, 2013.

On December 5, 2013, SO Okubena received a fax from Mr. Curosh containing a cover letter dated December 4, 2013, and a worksheet that Mr. Curosh had prepared which estimated petitioners' 2013 tax liability (after credit for petitioners' estimated tax payments) to be $47,820.[10] The cover letter indicated that petitioners had received no offers on either home and that Mr. Curosh would inform petitioners of SO Okubena's position that they had to pay all of their 2013 tax liability by January 15, 2014, or "better yet by 12/31/2013."

On December 6, 2013, SO Okubena called Mr. Curosh. Mr. Curosh told SO Okubena that he had not been able to contact petitioners and did not know whether they would agree to SO Okubena's insistence to increase the amount of their monthly estimated tax payment by December 31, 2013. SO Okubena informed Mr. Curosh that if petitioners did not pay by December 31, 2013, the $47,820 they had indicated they would owe for 2013 she would issue a notice of determination sustaining the proposed levy. She also informed Mr. Curosh that if petitioners

---

[10]The worksheet indicated that petitioners would have an adjusted gross income of $419,840, income tax of $106,459, and tax payments of $58,639.

**[\*12]** were able to make the $47,820 tax payment by December 31, 2013, she would be agreeable to an installment agreement providing for a monthly payment of $10,000, increasing to $15,000 per month in June 2014.

On January 3, 2014, SO Okubena called Mr. Curosh to inquire as to whether petitioners planned to make the $47,820 tax payment. Mr. Curosh told SO Okubena that petitioners did not plan to make the payment and that they were unwilling to withdraw funds from petitioner husband's section 401(k) plan account to make the tax payment. SO Okubena told Mr. Curosh that, according to her records, petitioners' last estimated tax payment was on September 3, 2013, and that they had failed to make any additional estimated tax payments for 2013. She also told Mr. Curosh that a notice of determination would be issued sustaining the proposed levy because petitioners were not in compliance with their estimated tax payment obligations and would owe additional tax when they filed their 2013 return.

On February 27, 2014, the IRS issued a notice of determination sustaining the proposed levy with respect to 2007-11. In the notice the IRS determined, among other things, that petitioners were "not in compliance with required estimated tax payments for the year ending December 31, 2013" and that petitioners' "history of non-compliance is evident over the past six years".

**[*13]**                                     OPINION

I. Section 6330 Hearing

Under section 6331(a), the Secretary may levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment.  Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  Section 6330(a) and (b) and section 6331(d) provide that the Secretary must give the taxpayer at least 30 days' written notice of his intent to levy and at least 30 days before any levy begins send the taxpayer written notice of the taxpayer's right to a hearing before the IRS Appeals Office.

If the taxpayer requests an Appeals Office hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may challenge the existence or amount of the underlying tax liability if he or she did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin.

[*14] Regs.  Petitioners did not challenge the existence or amounts of their underlying tax liabilities.

After the Commissioner issues a notice of determination, a taxpayer may petition this Court for review thereof.  Sec. 6330(d)(1).  The Court's review of the Commissioner's determination is subject to the provisions of section 6330.  Because petitioners do not dispute the underlying tax liabilities for the years at issue, we review respondent's determination for abuse of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

II.  Petitioners' Arguments

Petitioners argue that SO Okubena abused her discretion in requiring them to pay their 2013 tax in full before she would approve an installment agreement.  Respondent disagrees, arguing it was within SO Okubena's discretion to deny the requested installment agreement because petitioners had a history of noncompliance and had failed to make large enough estimated tax payments to satisfy their 2013 tax liability.

At the time of the Appeals Office hearing petitioners owed the IRS approximately $1 million in outstanding tax liabilities from 2007-11 resulting from petitioners' habitually underpaying estimated tax for each of those years.

**[\*15]** Additionally, petitioners continued to accrue tax liabilities because of their failure to make estimated tax payments large enough to satisfy their 2012 and 2013 tax liabilities. Petitioners' last estimated tax payment was on September 3, 2013, and they failed to make any additional payments after that date.

A settlement officer may refuse a taxpayer's collection alternative if the taxpayer has a history of noncompliance and is not in compliance with current tax obligations. See Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), aff'g 123 T.C. 1 (2004); Starkman v. Commissioner, T.C. Memo. 2012-236; Martino v. Commissioner, T.C. Memo. 2009-43; see also Internal Revenue Manual pt. 5.14.1.4.1(18) (Mar. 4, 2011) ("Compliance with filing, paying estimated taxes, and federal deposits must be current from the date the installment agreement begins."). As seen in the case before us, requiring taxpayers to make sufficient estimated tax payments before granting a collection alternative ensures that current taxes are paid and avoids "the risk of pyramiding tax liability." See Schwartz v. Commissioner, T.C. Memo. 2007-155.

We conclude SO Okubena did not abuse her discretion in rejecting petitioners' request for an installment agreement.

[*16] To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.
