T.C. Memo. 2020-18

UNITED STATES TAX COURT

NORTHSIDE CARTING, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1117-18L.                          Filed January 23, 2020.

Jeff Thomson (an officer), for petitioner.

<u>Marie E. Small</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[\*2]** the Internal Revenue Service (IRS or respondent) to uphold collection actions with respect to unpaid employment taxes for three calendar quarters during 2015 and 2016. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection actions was proper as a matter of law. We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and respondent's motion papers, including the attached declarations and exhibits. See Rule 121(b). Petitioner had its principal place of business in Massachusetts when it petitioned this Court.

Petitioner was incorporated in Massachusetts in 1996 and is engaged in the trash removal and recycling business. The company is family run and has about 50 employees. Petitioner filed Forms 941, Employer's Quarterly Federal Tax Return, reporting payroll taxes due for the quarters ending September 30 and December 31, 2015 (2015 quarters), and June 30, 2016 (2016 quarter). But it did not pay the full balance of the taxes shown as due on those returns. In an effort to collect these unpaid liabilities the IRS proceeded with collection actions.

**[*3]** A.    Collection Actions

On June 20 and September 12, 2016, the IRS mailed petitioner Notices CP297A, Notice of Seizure and Notice of Your Right to a Hearing (2016 levy notices), for the 2015 quarters.  The levy notices informed petitioner that it could request a CDP hearing within 30 days of each notice.  Petitioner did not submit a hearing request by the dates prescribed.

The IRS subsequently mailed petitioner a notice of Federal tax lien filing (lien notice) for the 2015 quarters, informing petitioner that it could request a CDP hearing by January 6, 2017.  In a letter postmarked December 30, 2016, petitioner requested a hearing for the 2016 levy notices and the lien notice, checking the boxes indicating its interest in an "Installment Agreement" and an "Offer in Compromise."  This hearing request was timely with respect to the lien notice but not with respect to the 2016 levy notices.

On March 13, 2017, respondent mailed petitioner a Notice CP297A (2017 levy notice) for the 2016 quarter.  The 2017 levy notice informed petitioner that it could request a CDP hearing by April 12, 2017.  Petitioner timely requested a hearing, checking the box for "Installment Agreement."

**[*4]** B.      <u>CDP and Equivalent Hearing</u>

On April 3, 2017, petitioner's hearing request regarding the 2015 quarters was assigned to a settlement officer (SO) in the IRS Appeals Office in Boston, Massachusetts. The SO reviewed petitioner's account transcripts and determined that the requirements of applicable law and administrative procedure had been met. The SO observed that, in addition to its unpaid tax liabilities for the 2015 quarters, petitioner had unpaid employment taxes for other periods totaling more than $700,000.

On April 4, 2017, the SO mailed petitioner a letter scheduling a hearing for May 4, 2017. The SO informed petitioner that, in order for him to consider an installment agreement (IA) or an offer-in-compromise (OIC), petitioner needed to supply: (1) a completed Form 433-B, Collection Information Statement for Businesses, with supporting documentation; (2) signed copies of unfiled tax returns for 2015 and 2016; (3) a Form 656, Offer in Compromise, or a proposal for an IA; and (4) proof of timely deposit of all Federal employment taxes for the current quarter. Petitioner did not submit any of the requested information before the hearing.

On May 4, 2017, the hearing was held as scheduled with petitioner's corporate officer, Jeff Thomson. The SO explained that he would be conducting a CDP hearing with respect to the NFTL filing only, since petitioner's hearing request

[*5] with respect to the levy notices was untimely. As to them petitioner would be given an "equivalent hearing."[2]

During the call the SO noted that petitioner's outstanding tax liabilities totaled $783,272. Mr. Thomson acknowledged that petitioner owed the taxes. But he stated that petitioner wished to execute an IA as a collection alternative and sought additional time to supply the necessary financial information. The SO agreed and asked petitioner to provide by May 9, 2017, a completed Form 433-B, three months of bank records, a current profit and loss statement, a proposed IA, signed quarterly tax returns for the two most recent calendar quarters, and a list of assets, accounts receivable, and accounts payable.

On May 9, 2017, Mr. Thomson sent the SO petitioner's quarterly tax return for the period ended March 31, 2017; a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2016; and a Form 433-B with attached lists of assets. Mr. Thomson did not include a proposed IA, a profit and loss statement, or a list of accounts receivable and accounts payable.

---

[2]An equivalent hearing resembles a CDP hearing in that it is held with the IRS Appeals Office, the SO considers the same issues that would have been considered at a CDP hearing, and the SO generally follows the same procedures. See Craig v. Commissioner, 119 T.C. 252, 258 (2002). The chief difference is that the SO's decision following an equivalent hearing is embodied in a "decision letter" as opposed to a "notice of determination." Ibid.

**[\*6]**  On May 22, 2017, the SO called Mr. Thomson to discuss the information that had been provided and the documents that were still missing.  Mr. Thomson stated that petitioner now hoped to pay its tax liabilities in full after selling an asset and collecting a large account receivable.  Several days later Mr. Thomson faxed to the SO documents indicating that petitioner might soon receive $550,000 from these sources.  The SO determined on the basis of these documents that a 45-day extension of time to pay was reasonable.

Accordingly, on May 30, 2017, the SO sent petitioner, and asked that petitioner sign and return to him, a Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, Waiver of Suspension of Levy Action, and Waiver of Periods of Limitation in Section 6330(e)(1).  Mr. Thomson signed the Form 12257 and returned it to the SO on June 12, 2017.  Petitioner thereby agreed that "the Notice of Federal Tax Lien was properly filed," that petitioner was being granted an extension of time to pay its liability in full, and that petitioner's "payment of $827,633.40 [wa]s due by July 17, 2017."

On June 30, 2017, the SO received from petitioner a Form 2848, Power of Attorney and Declaration of Representative, authorizing Philip McCoy to represent petitioner.  During a subsequent telephone conference Mr. McCoy stated that

**[*7]** petitioner was unable to meet its payment commitment as set forth in the Form 12257 but instead wished to negotiate a collection alternative. Mr. McCoy indicated that petitioner would propose an IA with a large downpayment. The SO expressed willingness to consider this request, provided that petitioner promptly supplied a three-month profit and loss statement with supporting bank records.

On August 4, 2017, the SO received from Mr. McCoy a proposal for an IA with a $400,000 initial payment followed by monthly installments of $10,000. The letter mentioned that petitioner was gathering information to request abatement of penalties on the basis of reasonable cause. On August 23, 2017, Mr. McCoy transmitted petitioner's financial statements for the first half of 2017 but without supporting bank records. The financial statements showed that petitioner experienced losses in excess of $800,000 during this period.

On September 14, 2017, the CDP case involving the levy notice for petitioner's 2016 quarter was transferred to the SO. He reviewed petitioner's account and verified that the tax and penalty for that period had been properly assessed. As of September 29, 2017, petitioner's outstanding liability for the 2016 quarter was $87,779.

On October 25, 2017, the SO called Mr. McCoy and expressed doubt that petitioner, given its substantial losses, could meet the terms of the proposed IA.

[*8] Mr. McCoy replied that petitioner had jettisoned several unprofitable contracts and that some of its employees were family members who would be willing to take pay cuts. The SO gave petitioner two weeks to supply a profit and loss statement for the third quarter of 2017 and a salary reduction analysis.

On October 27, 2017, Mr. McCoy informed the SO that petitioner wished to request penalty abatement. The SO agreed to consider that relief if petitioner submitted Form 843, Claim for Refund and Request for Abatement, by November 9, 2017, a deadline that the SO later extended to November 15, 2017.

On December 11, 2017, having received none of the requested documents or any further communication from Mr. McCoy or petitioner, the SO decided to close the case. On December 20, 2017, the SO issued a decision letter (sustaining the 2016 levy notices) and a notice of determination (sustaining the NFTL filing for the 2015 quarters and the 2017 levy notice). The notice of determination explained that petitioner did not qualify for an IA because it "did not submit all the requested financial information to support * * * [its] collection information statement" and because it was not in compliance with its current filing and payment obligations. At that time IRS records indicated that petitioner "ha[d] not filed Form 941 for the tax quarter 09/30/2017" and was "not current with * * * [its] Federal Tax Deposits for the payroll tax quarter ending 12/31/2017."

**[\*9]** Petitioner's request for penalty abatement was not considered because petitioner failed to submit a formal written request for abatement by the SO's deadline.

## C.    Court Proceedings

On January 22, 2018, petitioner timely petitioned this Court, attaching both the decision letter and the notice of determination.  Petitioner stated that it disagreed with the IRS determination because the SO "did not calculate the proper amount of tax due" or "apply payment to outstanding balances," "did not fully consider an offer in compromise," "did not consider * * * [petitioner's] penalty abatement request," and "agreed to a settlement and then issued a decision without following through with the agreement."

On August 7, 2018, respondent filed a motion for summary judgment.  The Court directed petitioner to respond to that motion by August 31, 2018, warning that failure to respond could result in a decision against it.  See Rule 121(d).  Petitioner filed no response.  On September 17, 2018, the Court denied respondent's motion for summary judgment, noting possible gaps in the record then before the Court.

The parties subsequently conferred and expressed hope that the case could be resolved without trial.  But a year passed and they were unable to reach agree-

**[\*10]** ment. On October 3, 2019, respondent filed a second motion for summary judgment and an accompanying declaration, which supplemented the administrative record. We directed petitioner to respond to the motion by November 6, 2019, warning that "under Tax Court Rule 121(d), judgment may be entered against a party who fails to respond to a Motion for Summary Judgment." Petitioner filed no response.

## Discussion

### A.    Jurisdiction

The Tax Court is a court of limited jurisdiction, and we must first ascertain whether a case before us is one that Congress has authorized us to consider. Sec. 7442; Estate of Young v. Commissioner, 81 T.C. 879, 881 (1983). In a CDP case such as this, our jurisdiction depends on the issuance of a notice of determination following a timely request for a CDP hearing and the filing of a timely petition for review. Sec. 6330(d)(1); Orum v. Commissioner, 123 T.C. 1, 8, 11-12 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005). A decision letter ordinarily does not constitute a "determination" within the meaning of section 6330(d), and we normally lack jurisdiction to consider a taxpayer's challenge to the outcome of an equivalent hearing. See Kennedy v. Commissioner, 116 T.C. 255, 263 (2001).

[*11] Petitioner's hearing request with respect to the 2016 levy notices was untimely.  Petitioner therefore was not entitled to a CDP hearing and was instead given an equivalent hearing.  See supra note 2.  The SO's decision reflected in the decision letter was not a "determination" within the meaning of section 6330(d), and it is not subject to our review.  See Kennedy, 116 T.C. at 263.

However, petitioner's hearing requests were timely with respect to the NFTL filing for the 2015 quarters and the 2017 levy notice.  Accordingly, petitioner was appropriately given a CDP hearing with respect to those matters, and we have jurisdiction to review the notice of determination sustaining those proposed collection actions.

B.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b) we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  Ibid.  However, the nonmoving party may

**[\*12]** not rest upon the mere allegations or denials in his pleadings, but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see <u>Sundstrand Corp.</u>, 98 T.C. at 520.

Because petitioner did not respond to the motion for summary judgment, we could enter decision against it for that reason alone. <u>See</u> Rule 121(d). We will nevertheless consider the motion on its merits. We conclude that no material facts are in genuine dispute and that this case is appropriate for summary adjudication.

C.    <u>Standard of Review</u>

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that we should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity or amount of the taxpayer's underlying liability is at issue, we review the Commissioner's determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not properly before us, we review the IRS action for abuse of discretion. <u>Id.</u> at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

**[\*13]** D.     <u>Underlying Liability</u>

A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. Sec. 6330(c)(2)(B); <u>see</u> sec. 6320(c).  However, a taxpayer is precluded from challenging his underlying liability in this Court "if it was not properly raised in the CDP hearing." Thompson v. Commissioner, 140 T.C. 173, 178 (2013); <u>see</u> <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 114 (2007).  "An issue is not properly raised if the taxpayer fails * * * to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity." <u>Moriarty v. Commissioner</u>, T.C. Memo. 2017-204, 114 T.C.M. (CCH) 441, 443 (quoting section 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.), <u>aff'd</u>, 122 A.F.T.R.2d (RIA) 2018-5984 (6th Cir. 2018); <u>see</u> <u>Obeirne v. Commissioner</u>, T.C. Memo. 2018-210, at \*9.

During the CDP hearing neither Mr. Thomson nor Mr. McCoy disputed petitioner's employment tax liabilities for the three quarters in question.  Although petitioner asserted in its petition that the SO "did not calculate the proper amount of tax due" or "apply payment to outstanding balances," petitioner is precluded from advancing those arguments in this Court because it failed to raise an underlying liability challenge at the IRS Appeals Office. <u>See</u> <u>Thompson</u>, 140 T.C.

[*14] at 178; Giamelli, 129 T.C. at 114; secs. 301.6330-1(f)(2), Q&A-F3, 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  We accordingly review the SO's action for abuse of discretion only.  Goza, 114 T.C. at 182.

E.     Abuse of Discretion

In reviewing the SO's determinations we consider whether he:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).  Our review of the record establishes that the SO properly discharged all of his responsibilities under section 6330(c).

Petitioner urged in its petition that the SO "did not fully consider an offer in compromise" and "did not consider * * * [its] penalty abatement request."  But petitioner did not submit a completed Form 656 or otherwise pursue an OIC with the SO, advancing an IA as its sole collection alternative.  "There is no abuse of discretion when Appeals fails to consider an offer-in-compromise when a Form 656 was not submitted to Appeals."  Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, aff'd, 592 F. App'x 824 (11th Cir. 2014).

[*15] Nor did Mr. McCoy submit a written request for penalty abatement on a Form 843 despite being given repeated opportunities to do so. The SO did not abuse his discretion in declining to consider penalty abatement under these circumstances. See Pough v. Commissioner, 135 T.C. 344, 351 (2010).

Finally, petitioner asserts that the "IRS agreed to a settlement and then issued a decision without following through with the agreement." But the SO did not agree to a settlement. Petitioner executed a Form 12257, agreeing to pay its tax liabilities in full, but later said it was unable to fulfill that commitment. Instead it proposed an IA with a downpayment of $400,000 and monthly installments of $10,000. The SO requested additional financial information to support the feasibility of that proposal, but petitioner never supplied that information.

Section 6159 authorizes the Commissioner to enter into an IA if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson v. Commissioner, 140 T.C. at 179. Subject to exceptions not relevant here, the decision to accept or reject an IA lies within the Commissioner's discretion. See Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. We will not substitute our judgment for the SO's, recalculate the taxpayer's ability to pay, or independently

**[\*16]** determine what would be an acceptable offer. See Thompson, 140 T.C. at 179; Lipson v. Commissioner, T.C. Memo. 2012-252.

We have consistently held that it is not an abuse of discretion for an Appeals officer to reject collection alternatives and sustain collection action where the taxpayer has failed, after being given sufficient opportunities, to supply the necessary information. See, e.g., Solny v. Commissioner, T.C. Memo. 2018-71, at \*10; Gentile, 106 T.C.M. at 77. Here, the SO expressed doubt that petitioner could meet the terms of its proposed IA given the losses of $800,000 during the first half of 2017. Mr. McCoy replied that petitioner's financial condition might be turning the corner, stating that it had jettisoned unprofitable contracts and that its employees were willing to take pay cuts. On October 25, 2017, the SO gave petitioner two weeks to validate that prognosis by supplying a profit and loss statement for the third quarter of 2017 and a salary reduction analysis. Having received neither of those documents during the ensuing seven weeks--a period in which petitioner missed three deadlines to supply documents--the SO did not abuse his discretion in closing the case.

The SO indicated in the notice of determination that petitioner was not in compliance with its current filing and payment obligations, having failed to file Form 941 for the third quarter of 2017 and having failed to make required tax de-

[*17] posits during the final quarter of that year. The requirement of current compliance as a condition of executing an IA "ensures that current taxes are paid and avoids 'the risk of pyramiding liability.'" Hull v. Commissioner, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441 (quoting Schwartz v. Commissioner, T.C. Memo. 2007-155, slip op. at 8); see Orum, 412 F.3d 819. The SO was justified in declining to execute an IA for that reason alone. See Cox v. Commissioner, 126 T.C. 237, 258 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008); Cmty. Law Firm, Inc. v. Commissioner, T.C. Memo. 2018-198, at *8-*9; Hull, 109 T.C.M. (CCH) at 1441.

The SO in this case worked constructively with petitioner and its representatives for more than six months in an effort to achieve a collection alternative. But an SO is not obligated to negotiate indefinitely. Kreit Mech. Assocs., Inc. v. Commissioner, 137 T.C. 123, 134 (2011); Rayle v. Commissioner, T.C. Memo. 2019-119, at *12. Given petitioner's nonresponsiveness toward the end of the process, the SO was justified in closing the case when he did on the basis of the information before him at that time. We note that petitioner is free to propose to the IRS at any time, for its consideration and possible acceptance, an IA supported by the necessary financial information.

[*18] In consideration of the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.