# United States Tax Court

T.C. Memo. 2024-54

LISA M. HOLLEY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6032-23L.                                      Filed May 9, 2024.

————

Lisa M. Holley, pro se.

*Nathaniel C. Smith*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(b) and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a Notice of Federal Tax Lien (NFTL) filing.  The notice relates to petitioner's unpaid tax liabilities for 2011 and 2017–2019 (tax years in question).  Respondent has filed a Motion for Partial Summary Judgment under Rule 121, contending that the settlement officer did not abuse her discretion in sustaining the NFTL filing.  Finding that there exist no disputes of material fact on this point, we will grant the Motion.

—————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round monetary amounts to the nearest dollar.

[*2]                                    *Background*

The following facts are based upon the parties' pleadings and respondent's Motion papers, Declarations, and attached Exhibits, which include the administrative record of the CDP proceeding. *See* Rule 121(c). They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). During some or all of the tax years in question, petitioner was employed as an anesthesiologist by Holley Anesthesia, an S corporation whose stock she owned. Petitioner resided in Texas when she timely petitioned this Court.

Petitioner did not file a timely Federal income tax return for 2011. On June 5, 2019, she filed a delinquent return for that year but did not pay the full amount shown as due. On July 8, 2019, the IRS assessed the unpaid amount against her.

Petitioner did not file timely Federal income tax returns for 2017–2019. On February 24, 2021, she filed delinquent returns for these years, but did not pay the amounts of tax shown as due. On June 14, 2021, the IRS assessed the amounts shown as due on her 2018 and 2019 returns. On June 28, 2021, the IRS assessed the amount shown as due on her 2017 return. For all four years, the IRS also assessed applicable additions to tax under sections 6651(a)(1) and (2) and 6654.

When petitioner did not pay these tax liabilities upon notice and demand for payment, the IRS filed the NFTL and issued her, on March 24, 2022, a timely Notice of Federal Tax Lien Filing and Your Right to a Hearing. The Notice reflected unpaid balances of $2,162 for 2011, $43,118 for 2017, $15,768 for 2018, and $3,424 for 2019.

Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, checking the boxes for a collection alternative in the form of an installment agreement (IA) or an offer-in-compromise (OIC). Her case was assigned to a settlement officer (SO) in the IRS Independent Office of Appeals (Appeals) in Dallas, Texas. The SO verified that petitioner's tax liabilities for 2011 and 2017–2019 had been properly assessed and that all applicable legal and administrative requirements had been satisfied. The SO ascertained that petitioner's total outstanding Federal income tax liability, for all open years, was $2,855,450 as of October 24, 2022. This amount encompassed liabilities for both CDP years and non-CDP years.

**[\*3]** On November 29, 2022, the SO conducted a telephone conference with petitioner's representative, who confirmed that petitioner was not seeking an OIC. Later that day the SO received financial information indicating that petitioner had equity in assets in excess of $2 million, including real estate valued at $688,884 and a defined benefit plan valued at $1,546,267. Given the magnitude of petitioner's total outstanding tax liability, the SO concluded that she might be eligible for a "partial pay" IA (PPIA)[2] but that she would need to use equity in assets to pay down her tax liabilities before a PPIA could be considered.

Upon review of petitioner's Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, the SO concluded that petitioner had failed to report certain assets and items of income. In particular, the SO questioned the zero values petitioner had reported for Holley Anesthesia, her S corporation, and for LH Anesthesia, Inc., a related C corporation. The SO also determined that petitioner was not in compliance with respect to her 2022 estimated tax liability. The SO informed petitioner's representative of these deficiencies, and he agreed to discuss them with his client.

Upon review of publicly accessible court records, the SO ascertained that petitioner had filed for bankruptcy four times between 2016 and 2020. Each case was dismissed by the court, which determined that petitioner was seeking to delay collection efforts by the IRS and by United Healthcare, a judgment creditor. In her case activity record the SO noted the determinations by the bankruptcy court that petitioner had filed for bankruptcy in bad faith, had submitted false and misleading documents to the court, had made unauthorized payments during the bankruptcy case, and had engaged in efforts to hide income and assets.

On November 30, 2022, the SO submitted petitioner's Form 433–A and supporting information to the IRS Office of Collections (Collection) to conduct an "appeals referral investigation" (ARI).[3] On January 4, 2023, Collection informed the SO of its conclusion that petitioner had the ability to pay down a portion of her outstanding liabilities from

---

[2] A PPIA is an IA whereby the taxpayer agrees to pay only part of the total liability. §§ 6159(a), 7122. The IRS may enter into a PPIA when the taxpayer has some ability to pay but full payment cannot be achieved within the statutory collection period. *Internal Revenue Manual* (IRM) 5.14.2.1.1(2) (Apr. 26, 2019).

[3] An ARI may be necessary where the appropriateness of a collection alternative cannot be determined without additional information that Appeals cannot secure from internal sources or the taxpayer. IRM 8.22.7.4(1) (Aug. 26, 2020).

**[*4]** available equity in assets. That same day the SO relayed this information to the tax professional representing petitioner under a power of attorney (POA). The SO stated that no request for a collection alternative could be considered until petitioner took this step and came into compliance for 2022.

Petitioner's representative withdrew later that day. (The SO noted in her case activity record that "TP changes POAs frequently.") Petitioner's new representative contacted the SO on January 27, 2023, and reiterated petitioner's desire for an IA. But the representative made no specific offer in terms of monthly payments or payment period. The SO reiterated that petitioner would need to pay down her liabilities using equity in assets before any IA or PPIA could be approved. When the SO noted that petitioner was still not in compliance with her estimated tax obligations, the representative replied that petitioner "will make payments online and send confirmations." But no estimated tax payments were ever made.

On February 15, 2023, petitioner's representative called the SO and indicated that petitioner intended to seek abatement of interest and additions to tax. The SO advised that any request for abatement must include "substantiation to support [the taxpayer's claimed] basis for abatement." The SO determined that petitioner was ineligible for relief under the "First Time Abate" (FTA) program.[4]

On February 27, 2023, the SO received from petitioner's representative 17 substantially identical Forms 843, Claim for Refund and Request for Abatement, seeking abatement of interest and additions to tax. These forms were unsigned. As justification for abatement, the box was checked for "Reasonable cause or other reason allowed under the law," but no substantiation was provided.

On March 6, 2023, the SO called petitioner's representative and explained that the Forms 843 could not be processed because they were unsigned. The SO pointed out that interest could not be abated absent a showing of IRS error; that "blanket statements, without proof, are not sufficient" to justify abatement of additions to tax; and that the requests for abatement "shouldn't be the same for [the] 2011, 2017, 2018 and 2019

---

[4] Under this policy, the IRS will agree to abate the additions to tax under section 6651(a)(1) and (2) for the first time that a taxpayer is subject to them, i.e., for a single return. *See* IRM 20.1.1.3.3.2.1 (Mar. 29, 2023). To qualify, the taxpayer must not have had any unreversed additions to tax for any of the three years preceding the year for which relief is sought. *Ibid.*

[*5] years as all circumstances should be different." The SO indicated in her case activity record that petitioner's representative "agreed and would get abatements back to SO by COB."

Petitioner's representative did not supply the SO with properly executed Forms 843 by the close of business on March 6 or subsequently. After hearing nothing from petitioner or her representative by March 17, the SO decided to close the case. She noted in her case activity record that petitioner had been informed of Collection's determination that she had "equity in assets [and] needed to use equity . . . before an IA can be considered." But during the ensuing ten weeks petitioner had made no specific IA proposal and had expressed no willingness to liquidate any asset to pay down her tax liability. Petitioner remained out of compliance with her estimated tax obligations, despite her representative's January 27 pledge that payments would be made online.

The SO noted that petitioner was a "serial filer" in bankruptcy court, having "amassed significant personal assets while not paying income taxes and ha[ving] taken actions to avoid collection efforts of the IRS." For all these reasons the SO determined that the NFTL filing should be sustained. The SO considered petitioner's request for abatement of the additions to tax but found her ineligible for the FTA program because she had incurred other additions to tax "within the 3 years preceding every tax liability." Finally, the SO concluded that the Forms 843, being unsigned, could not be processed and that petitioner "doesn't meet the criteria for verbal [abatement] request."

On March 22, 2023, Appeals issued petitioner a notice of determination sustaining the NFTL filing for the reasons listed above. On April 22, 2023, petitioner filed a Statement of Taxpayer Identification Number, without attachments or any explanation of her disagreement with the IRS. We filed that document as her Petition (and subsequently sealed it).

On July 27, 2023, petitioner filed a Reply to Answer (Reply) in which she contended that she "paid taxes . . . due for tax years 2016–2021" and is entitled "to have the penalties [actually, additions to tax] and interest accrued on the 2016–2019 tax liability abated" on the basis of reasonable cause. Petitioner's only mention of collection alternatives in her two-page Reply is an allegation, contained in the document's final paragraph, that she should be "allow[ed] . . . an offer in compromise filing."

**[\*6]**   On February 1, 2024, respondent filed the Administrative Record of the CDP proceeding and a Certificate as to the Genuineness of the Administrative Record.  Two weeks later respondent filed a Motion for Partial Summary Judgment, seeking a ruling that the SO did not abuse her discretion in denying petitioner's request for a collection alternative and sustaining the collection action.  Respondent notes that "the separate issue concerning petitioner's allegations that she is entitled to reasonable cause relief from the additions to tax and interest . . . remains in dispute."

By Order served February 20, 2024, we directed petitioner to respond, by March 22, 2024, to the Motion for Partial Summary Judgement.  We advised that, "under Tax Court Rule 121, judgment may be entered against a party who fails to respond to a Motion for Summary Judgment."  Petitioner did not respond, by that date or subsequently, to respondent's Motion or to our Order.

*Discussion*

I.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520.  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

Because petitioner did not respond to the Motion, we could rule against her for that reason alone.  *See* Rule 121(d).  We will nevertheless address respondent's Motion on the merits.  Finding no material facts to be in dispute regarding the SO's exercise of her discretion, we find that issue appropriate for summary adjudication.

**[\*7]** II.   *Standard of Review*

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo.  *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000).  In other respects we review the SO's action for abuse of discretion only.  *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003) (per curiam); *Goza*, 114 T.C. at 182.

In his Motion respondent seeks judgment limited to the question whether the SO abused her discretion in sustaining the collection action.  We review that action under the abuse-of-discretion standard.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).  We have jurisdiction to review a settlement officer's rejection of a collection alternative that encompasses liabilities for both CDP years and non-CDP years.  *See Sullivan v. Commissioner*, T.C. Memo. 2009-4, 97 T.C.M. (CCH) 1010, 1014–15.

III.   *Abuse of Discretion*

In deciding whether the SO abused her discretion, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary."  *See* § 6330(c)(3); *see also* § 6320(c).  We conclude that the SO satisfied all of these statutory requirements.

A.   *Offer-in-Compromise*

Taxpayers may raise at a CDP hearing relevant issues relating to the collection action and are entitled to make offers of collection alternatives.  *See* § 6330(c)(2) and (3).  Section 7122(a) authorizes the IRS to compromise an outstanding tax liability, but it is up to the taxpayer to propose an OIC for Appeals' consideration.  *Reed v. Commissioner*, 141 T.C. 248, 254 (2013), *supplemented by* T.C. Memo. 2014-41; *Hill v. Commissioner*, T.C. Memo. 2023-58, at \*8.  And a taxpayer who wishes

[*8] to pursue an OIC must submit a Form 656, Offer in Compromise. *Rafiee v. Commissioner*, T.C. Memo. 2023-119, at *8–9.

In her Reply petitioner alleged that she should be "allow[ed] . . . an offer in compromise filing." Assuming arguendo that this allegation constitutes a challenge to the SO's exercise of discretion, we reject the argument. Although petitioner checked the box for "Offer in Compromise" on her Form 12153, her representative confirmed during the CDP hearing that she was not requesting an OIC. In any event, she did not make a concrete offer or submit to the SO a completed Form 656.

B.    *Proposed PPIA*

Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability." The decision to accept or reject an IA or a PPIA lies within the Commissioner's discretion. *Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Hartmann v. Commissioner*, T.C. Memo. 2024-46, at *12.

The type of agreement the SO identified as being potentially available to petitioner was a PPIA, under which she could offer to pay some (but not all) of her outstanding liabilities. The Commissioner has issued guidelines, set forth in the IRM, for settlement officers to follow in considering a taxpayer's offer of a PPIA. *See Thompson*, 140 T.C. at 179. A prerequisite for approval of a PPIA is that the taxpayer be "in compliance with . . . estimated tax payment requirements." IRM 5.14.2.2.4(1) (Apr. 26, 2019). The requirement of current compliance as a condition of executing a PPIA "ensures that current taxes are paid and avoids 'the risk of pyramiding tax liability.'" *Rafiee*, T.C. Memo. 2023-119, at *9 (quoting *Hull v. Commissioner*, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441). Acceptance of a PPIA also requires an SO to have determined that the taxpayer cannot sell or borrow against assets in order to make payments. IRM 5.14.2.2.2 (Apr. 26, 2019).

It was not an abuse of discretion for the SO to reject a PPIA. A taxpayer's failure to make estimated tax payments, standing alone, is sufficient to justify an SO's rejection of a collection alternative. *Christopher Cross, Inc. v. United States*, 461 F.3d 610 (5th Cir. 2006); *Giamelli v. Commissioner*, 129 T.C. 107, 111–12 (2007); *Rafiee*, T.C. Memo. 2023-119, at *9. After petitioner submitted financial documentation the SO correctly determined that she could qualify for an IA or a PPIA only

[*9] after coming into compliance with her 2022 estimated tax obligations. The SO reiterated this requirement to petitioner's representatives on several occasions. Despite promises that petitioner would make the requisite payments, the payments were not made.

Even if petitioner had satisfied her estimated tax obligations, she still would have needed to use equity in her assets (collectively valued at $2 million or more) to pay down a portion of her outstanding liabilities. In response to the ARI that the SO initiated, Collection determined that petitioner had equity in assets sufficient to pay a portion of her tax debt. The SO correctly informed petitioner that she "needed to use [that] equity . . . before an IA can be considered." When petitioner expressed no willingness to take that step, the SO reasonably decided to close the case.

The record indicates that the SO followed relevant IRM collection guidelines in evaluating petitioner's eligibility for a PPIA and in ultimately rejecting such relief. We have repeatedly held that an SO does not act arbitrarily or capriciously when she adheres to such guidelines. *Eichler v. Commissioner*, 143 T.C. 30, 39 (2014); *Abraham v. Commissioner*, T.C. Memo. 2021-97, 122 T.C.M. (CCH) 128, 131. It was not an abuse of discretion for the SO to reject a PPIA here.

C.    *Balancing*

Section 6330(c)(3)(C) requires the IRS to balance "the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." The record shows that the SO performed a balancing test, finding that the NFTL filing adequately balances the need for efficient tax collection with petitioner's concerns, citing her estimated payment deficiencies and her equity in assets. Given the magnitude of petitioner's outstanding liabilities and her failure to comply with her ongoing tax obligations, the SO did not abuse her discretion in sustaining the NFTL filing.

To reflect the foregoing,

*An appropriate order will be issued.*